[Civ. No. 8467.  Third Dist.  Nov. 5, 1954.]

CARL B. STEVENSON, Respondent, v. ROBERT C. LINK
et al., Appellants.

Albert H. Mundt and William A. Sitton for Appellants.

Busick & Busick for Respondent.

SCHOTTKY, J.—Plaintiff commenced an action against defendants, police officers of the city of Sacramento, and the city as their employer, alleging that said police officers as agents of said city did wilfully, unlawfully and maliciously attack, strike and beat plaintiff, and praying for compensatory damages in the sum of $25,000 and punitive damages in the sum of $5,000.

The case against the city of Sacramento was dismissed by the court prior to trial, and following a trial before a jury,

a verdict was returned awarding general damages in the sum of $1,500 and exemplary damages in the sum of $500 against the defendant police officers. A motion for a new trial was denied and this appeal is from the judgment entered upon the verdict.

While no contention is made that the evidence is insufficient to support the verdict, we believe it will be helpful to summarize very briefly the factual situation as shown by the record, before discussing the specific contentions of appellant.

The appellants, while acting as police officers, on October 26, 1951, at about 5 p. m., were patrolling K Street, in the city of Sacramento, between Fourth and Fifth Streets, in a patrol car, clearly designated as such. Both were in full uniform. The respondent, Carl B. Stevenson, had double parked his automobile on K Street, headed in a westerly direction. The respondent was directed to move his automobile and when he failed to do so, he was served with a citation by Officer Davey. Different versions, one by respondent and the other by appellants, of exactly what occurred at the scene, both before and after the citation was issued, were presented in evidence. It is clear, however, from both versions, that a verbal altercation took place after the respondent had refused to move his automobile, as a result of which the respondent was placed under arrest and taken to the Hall of Justice at Sixth and H Streets. While in the basement of the building en route to the elevator leading to the upper floors and the jail, another altercation occurred, details of which are in serious dispute, both parties again presenting different and irreconcilable versions. The respondent testified that the officers took him to the elevator which he and Officer Davey entered in the presence of the elevator operator, and that thereafter Officer Link ordered him out of the elevator. Then, according to respondent, Officer Link removed his service revolver and belt, handing the articles to the elevator operator. Thereupon, according to respondent, the officers proceeded to beat him without provocation and in order to punish him for what had occurred upon the street. The elevator operator, incidentally, denied that any such incident occurred in his presence. The officers testified that when they and the respondent reached a point near the elevator, and after one of the officers had rung for the elevator, respondent asked of them what they were going to do with him. He was informed, "You are going right up to jail." He replied, "I am not going to jail" or something like that and started swinging

on Officer Link. He was, according to the appellants, immediately subdued, the officers resorting to the use of their billy clubs in so doing. Respondent was taken to the emergency hospital and there examined, after which he was booked in jail on a traffic violation charge, a charge of disturbing the peace and a charge of resisting arrest.

Appellants base their argument for a reversal of the judgment upon two major contentions which they outline as follows:

1. That counsel for plaintiff was guilty of prejudicial misconduct in that he, by inference, sought to convey and did convey to the entire jury that the defendants, and each of them, were protected against liability by a policy of insurance.

2. That counsel for plaintiff was guilty of prejudicial misconduct in placing before the jury, in the face of an admonition by the trial court and timely objections, the fact that plaintiff was acquitted on a charge in the municipal court arising out of the same incident which formed the basis for the suit in which this appeal is taken.

In presenting their contention that respondent's counsel was guilty of prejudicial misconduct in persisting in bringing the question of insurance before the jury, appellants quote from the record showing questions asked and statements made by respondent's counsel during the *voir dire* examination of prospective jurors, as follows:

"Q. Mr. Schrader, do you have any stock in the Fidelity and Casualty Insurance Company of New York? A. No, sir.

"Q. Do you have any relatives that are employed by the Fidelity and Casualty Company of New York? A. No, sir.

"The Court: Mr. Busick, I assume these defendants have no relation to an insurance company?

"Mr. Busick: Pardon me?

"The Court: I assume these defendants have no relation to an insurance company?

"Mr. Busick: No, they have no relation.

"Mr. Mundt: We object in any event, there is no insurance company in this action.

"The Court: The question is permissible but the Court will instruct the Jury that there is no insurance company a party to this action. Proceed.

"Mr. Busick, Jr.: Q. Do you have any relatives employed by the firm of Jones, Brand & Hullin, local representatives of the Fidelity and Casualty Company of New York? A. No, I do not.

"Mr. Mundt: I object to that question and cite it as prejudicial misconduct. Jones, Brand and Hullin are certainly not parties to this action.

"The Court: I think, Mr. Busick, the purpose of asking the question with regard to the liability insurance company is merely to——

"Mr. Busick, Jr.: For information, your Honor.

"The Court: To get the attitude of the juror, whether or not there is any feeling of that kind, but once that has been asked and the Court has instructed the jury that there is no insurance company a party to the suit, I think that precludes any further discussion.

"Mr. Busick, Jr.: That is what I want to find out.

"The Court: You can ask the Juror the same question——

"Mr. Busick, Jr.: I want to find out whether they have any relatives working for this particular insurance company and any relatives working for the——

"The Court: I will sustain it on the ground the insurance company is not a party to this action.

"Mr. Busick, Jr.: I believe, your Honor, we have the right to find out whether anyone has stock in this insurance company.

"The Court: That is right.

"Mr. Busick, Jr.: And whether they have relatives employed by the insurance company.

"The Court: By the insurance company but not all its agents because you can't put on any evidence tending to show agency.

"Mr. Busick, Jr.: No, but Jones, Brand and Hullin are the representatives of the Fidelity and Casualty Insurance Company and I think we have a right, in this instance to ascertain if any of their relatives are working for Jones, Brand and Hullin.

"Mr. Sitton: They are not interested in this matter either directly or indirectly and it is prejudicial.

"The Court: I might permit that one question but I want the Jury to understand very clearly that there is no insurance company which is a party to this action and I feel that it is up to you, Mr. Busick, not to create an atmosphere that might give the impression to the Jury that there is.

"Mr. Busick, Jr.: I want to state to the jurors that we are not suing the insurance company; the insurance company is not a party to this action.

"The Court: That is right.

"Mr. Mundt: We cite the remark of counsel as prejudicial misconduct and ask for a mistrial. I think he has gone so far into this question that he has prejudiced this case to the point where it cannot be reclaimed.

"The Court: You mean there might be an inference in the last question that there would be an insurance carrier?

"Mr. Mundt: Not only an inference, your Honor, but the very definite statement on the part of counsel that there is insurance in this case, which we deny, and I cite it as prejudicial misconduct and move the Court for a mistrial.

"The Court: Let me hear that last question, Mr. Reporter. (Question read by reporter.)

"Mr. Mundt: There is one manner in which that can be construed, your Honor.

"The Court: Mr. Busick, that is a very dangerous statement when you say you are not suing the insurance company.

"Mr. Busick: We are not suing any insurance company here, your Honor.

"Mr. Mundt: I don't believe anything Mr. Busick can say or anything the Court can say can cure that error, and I think a mistrial is justified.

"The Court: The Jury will understand, as I have stated before now two or three times that there is no insurance company a party to this action and any statement of counsel or otherwise that creates any kind of an inference to that extent must be entirely disregarded by you.

"The only purpose of asking these questions on your voir dire examination is to determine your frame of mind and ordinarily that is merely a question of whether or not you are a stockholder or interested in a certain insurance carrier and that is, generally speaking, as far as we go.

"I must say, Mr. Busick, in view of the situation I will preclude any further questioning along that line.

"The motion for a mistrial is denied."

Appellants argue "that the statements of Mr. Busick were highly prejudicial; the members of the jury panel were informed in definite language that there was insurance in the case, that the defendants were protected against liability and that they would not be required to personally respond to any judgment entered against them. We call the Court's attention to the specific language used by Mr. Busick, the specific reference, the constant reference to '*the insurance company; the insurance company is not a party to this action.*' "

In support of this contention appellants quote from *Robin-*

*son* v. *Wada,* 10 Cal.App.2d 5, in which the court said at page 8 [51 P.2d 171]:

"In the present case counsel for respondent propounded to numerous jurors proper questions on the subject under discussion. In certain instances, questions regarding insurance were practically the only questions asked of these jurors. When counsel examined Mrs. Rose M. Hoover, the following questions were asked and following answers were given: 'Q. You are not financially interested in the State Farm Mutual Insurance Company of Bloomington, Illinois? A. My car is insured in that. Q. In that company? A. Yes. . . . Q. Would the fact that your car is insured in this company, do you think that would tend or cause you to lean in their favor a little bit? A. I don't see why it would.' Counsel for appellant objected after the answer was given. The objection was sustained and the jury was admonished. In examining Mrs. Maude C. Evans, the following questions were asked and the following answers were given: 'Q. Are you or any of your family, interested financially in the State Farm Mutual Insurance Company of Bloomington, Illinois? A. I cannot say positively, Mr. Evans attends to that business, but if the line is carried by the Farmers Cooperative Exchange, I think the car is insured in that company. Q. I am almost sure that is the Farmers Inter-Exchange Insurance Company of Los Angeles, you are speaking of, at any rate no matter what it is would that have any bearing on your sitting in this action? A. No.'

"We are of the opinion that the foregoing examination went beyond what was reasonably necessary to serve the legitimate purpose for which questions may be asked regarding the possible interest of the juror in an insurance company. In the case of Mrs. Hoover, counsel asked her if the fact that she was insured in 'this company' (State Farm Mutual Insurance Company) would cause her to 'lean in their favor a little bit.' In the case of Mrs. Evans, counsel asked her if the fact that she might be insured in State Farm Mutual Insurance Company would have any bearing on her sitting 'in this action.' In both instances counsel directly implied that appellant was insured in said insurance company and that said company rather than appellant would be required to respond to any verdict that might be rendered. We cannot place the stamp of approval on this line of questioning as it could only serve the illegitimate purpose of unduly impressing upon the minds of the jurors the idea that the defendant

was protected by insurance. We therefore conclude that counsel overstepped the bounds of propriety and was guilty of misconduct.''

While the probable prejudice resulting from any reference to insurance in an action for damages is generally recognized, it is likewise recognized that a plaintiff is entitled to a fair and impartial jury, and the rule permitting counsel to ask in good faith whether a prospective juror is interested in a particular insurance company or in any insurance company has been established as a rule of necessity. However, the authorities have very definitely limited the scope of examination along this line. The general rule is well expressed in *Arnold* v. *California Portland Cement Co.*, 41 Cal.App. 420, at pages 425-426 [183 P. 171], as follows:

''. . . It is entirely proper for counsel to ask the jurors such questions as may reasonably be necessary to ascertain whether they are free from a bias or interest that may affect their verdict. To this end it is proper for counsel, in good faith, to ask of each juror whether he is interested as an agent or stockholder or otherwise in a specified casualty company. Or he may be asked the broad question whether he is interested in any insurance company insuring against liability for negligence. (*Rinklin* v. *Acker*, 125 App.Div. 244 [109 N.Y.Supp. 125] ; *Grant* v. *National etc. Co.*, 100 App. Div. 234 [91 N.Y.S. 805].) But counsel must take pains to propound such questions in such a manner as not unnecessarily to convey the impression that the defendant is in fact so insured. It is misconduct on the part of counsel for plaintiff in such actions so to frame his question that it goes beyond what is reasonably necessary to serve the legitimate purpose of eliciting the facts he is entitled to adduce in order to secure a jury free from bias or prejudice, if it is also apparent that the question may fairly be said to have the effect of serving the illegitimate purpose of prejudicing the jury by fixing in their minds the idea that the defendant is protected by insurance against liability for negligence. . . .

''. . . As was well said in one of the cases, counsel, at his peril, must steer a clear course between the Scylla of an interested jury on the one hand and the Charybdis of pettifoggery on the other. Asking a juror whether he is interested in a specified casualty company, or generally, in any insurance company, if the question be propounded in good faith, may be necessary in order to insure the plaintiff a body of jurors unbiased by any connection in favor of the party really

interested in the defense of the action. But beyond this it is neither necessary nor proper to go. It is not permitted to counsel, under the guise of testing their qualifications as jurors, to go beyond what is necessary to insure a body of unbiased jurors and seek to create the impression that an insurance company, and not the defendant in the case, will be called upon to respond to such damages as the jury may assess. When questions propounded to prospective jurors overreach the limits, they may prove unprofitable to the party asking them.''

We are convinced from a careful study of the *voir dire* examination hereinbefore set forth that counsel for respondent went far beyond what was necessary or proper, and that the effect of the statements of counsel could only be to inform the members of the jury panel that defendants were indemnified against any judgment for damages. The repeated and persistent reference to ''the insurance company,'' even though counsel made the statement that ''we are not suing the insurance company; the insurance company is not a party to the action,'' could only leave the impression that defendants were insured. The statement that no insurance company is a party to the action is not sufficient to cure the prejudicial effect of the statements of respondent's counsel because the jury had already been informed as to who were the parties to the action and doubtless were aware that an insurance company is never a party to such actions.

As was said in *Citti* v. *Bava*, 204 Cal. 136, at page 139 [266 P. 954]:

''The natural tendency of a line of examination that suggests to the jury that the defendant is indemnified against any judgment for damages against him is highly prejudicial to his rights, especially in a closely balanced case where the evidence otherwise would be easily sufficient on appeal to support a verdict either for the plaintiff or for the defendant. Such attempts on the part of counsel have frequently been held to be improper and prejudicial. [Citing cases.]''

In the instant case the evidence was sharply conflicting on the question of liability and a verdict in favor of appellant would be strongly supported by the record. Therefore, it must be held that the misconduct of respondent's counsel in making the statements with reference to insurance was so prejudicial as to constitute reversible error.

Appellants' final assignment of error is that counsel for respondent, over objection and contrary to the court's

ruling, apprised the jury that respondent had been acquitted of a criminal charge based on the same altercation which gave rise to this litigation. This incident took place upon the direct examination of respondent.

The record shows the following:

"Mr. Busick: Q. Following the complaint being served on you for resisting arrest, was there a trial on this charge of resisting arrest?

"Mr. Mundt: That is objected to as incompetent, irrelevant and immaterial.

"The Court: I will have to sustain it unless I understand a little further why you are bringing it in.

"Mr. Busick: To show the history, to show what transpired, to show the malicious beating.

"The Court: Just a minute, if you are going to make an offer, you will have to make it outside of the presence of the Jury.

"Mr. Busick: Yes.

"The Court: Suppose we make it in chambers.

"Mr. Sitton: May the record show that we assign counsel's remarks and his offer of proof as misconduct.

"The Court: The record may so show.

"Mr. Sitton: He knows better than that.

"The Court: Now, it is not necessary for you to make any statement along that line.

"Mr. Sitton: I assign that as misconduct on the part of counsel.

"The Court: I wish counsel would so understand that if they have any remarks, please address them to the Court. I don't like statements like that made out in the open air.

"The Jury is instructed to disregard all statements of counsel made in such fashion, particularly the last two on both sides.

"Now, if you gentlemen will come into chambers."

Thereupon, outside the presence and hearing of the jury, counsel for respondent made an offer of proof of the verdict in the criminal case, upon the ground that respondent's arrest showed a conspiracy by appellants and a course of conduct which indicated that appellants maliciously beat respondent. The offer was properly denied on the ground that "the results of criminal proceedings of this kind are not admissible in civil trials, and the only exception is the question of whether the man pleads guilty, but that isn't apparently, what your offer was going to show, and, for those

reasons, the Court determines it to be incompetent, irrelevant and immaterial.''

Upon returning to the courtroom and in the presence of the jury, the following occurred:

"MR. BUSICK, SR.: If the Court please, at this time, I offer for identification the verdict of the Jury in the Municipal Court in which this defendant was tried for the charge of resisting an officer.

"MR. MUNDT: We resist the motion and cite counsel's statement and offer as prejudicial misconduct and ask for a mistrial on the basis of his offer.

"MR. BUSICK, SR.: I am not stating what the verdict was.

"THE COURT: The offer will be denied pursuant to the ruling that the Court has recently stated to counsel.

"MR. BUSICK, SR.: I am not offering it in evidence.

"THE COURT: I can't see any purpose of it other than in line with what we discussed.

"MR. BUSICK, SR.: I am not offering it in evidence, but for identification because we made the offer and your Honor has made the ruling and now we ask that be filed for identification.

"THE COURT: The offer will be denied.

"MR. MUNDT: I renew my motion for a mistrial based on the offer, if the Court please.

"THE COURT: The motion will be denied. Proceed.

"MR. BUSICK, JR.: Q. Mr. Stevenson, following the trial, were you found not guilty of resisting arrest by the jury? A. Yes, sir.

"MR. MUNDT: Your Honor, that was all gone into and I cite that as prejudicial misconduct.

"THE COURT: I don't know how I can make it any plainer.

"MR. BUSICK: We are not offering the verdict.

"THE COURT: You are getting matters before the Jury that I have told you are not applicable and I must insist that you stay within the Court's rulings or I will declare a mistrial.

"MR. MUNDT: If your Honor please, it is so prejudicial now, that I know of no way in which it can be cured. The matter was discussed in chambers and the offer was refused in chambers and counsel brings it out again.

"THE COURT: I may say, counsel, you are on very thin ice.

"MR. BUSICK, JR.: It is not the matter we discussed in chambers at all.

"THE COURT: The Court differs with you on that and you

will have to abide by the Court's rulings whether you like them or not.

"MR. BUSICK, JR.: Very well.

"MR. MUNDT: It is so prejudicial now, your Honor——

"THE COURT: I will deny the motion for a mistrial at this time, but I warn counsel that any further move in the same direction—the Jury is instructed that any reference here to the outcome of any criminal trial with regard to this matter is entirely incompetent, irrelevant and immaterial and in no way connected with which you are concerned here now in a civil case which is brought by this plaintiff against these defendants. You are admonished to entirely disregard any statement of counsel to which objection has been sustained by the Court."

The foregoing shows clearly that respondent sought to have introduced in evidence the verdict of the jury in the criminal case in which respondent was charged with resisting an officer, a charge arising out of the very altercation upon which respondent was basing his action for damages. It is difficult to believe that counsel for respondent did not know that that verdict was clearly inadmissible in the instant case, but even after the matter was fully discussed in the trial judge's chambers and the court ruled that it was inadmissible, counsel for respondent upon the resumption of the trial in court asked respondent: "Q. Mr. Stevenson, following the trial were you found not guilty of resisting arrest by the Jury?" To which respondent answered, "Yes, sir." Thus respondent, after being informed by the court that the verdict was inadmissible and having the objection to his offer sustained, finally succeeded in getting before the jury the fact that respondent had been acquitted on the charge of resisting an officer.

Respondent concedes that it was improper conduct on his part but contends that because the trial court admonished the jury to disregard the outcome of the criminal trial the misconduct was not sufficiently prejudicial to require a reversal of the judgment. We do not agree with this contention of respondent. We have studied the record carefully. The respondent's evidence was to the effect that he had been beaten by appellants without any provocation. Appellants' evidence was to the effect that respondent, who was 6 feet tall and weighed approximately 220 pounds, upon being informed by appellants that they were taking him to jail, started swinging at them and that they then used their billy

clubs to overcome his resistance. There was a sharp conflict in the evidence, and it can be logically argued that the evidence as shown by the record preponderated in favor of appellants. Therefore, when respondent's counsel, as hereinbefore set forth, improperly brought out the fact that respondent had been acquitted of resisting arrest by a jury, the prejudicial effect of such misconduct was in our opinion so great that no admonition of the court could erase it from the minds of the jury, and was so substantial that section 4½ of article VI of the Constitution cannot save the judgment.

The judgment is reversed.

Van Dyke, P. J., and Peek, J., concurred.