[Civ. No. 22058.   Second Dist., Div. Two.   Mar. 5, 1957.]

SELMA SWIFT, as Executrix, etc., Respondent, v. HER-
MAN WINKLER et al., Appellants.

Early, Maslach, Foran & Williams, George Maslach and
Harry Boyd for Appellants.

John A. Jorgenson for Respondent.

FOX, J.—This is an action to recover damages for injuries plaintiff suffered when he fell while in the act of stepping up on the front porch of defendants' grocery store. Plaintiff charges that his mishap was due to defendants' negligence. A jury returned a verdict in plaintiff's favor for $5,000. Defendants appeal.

In seeking a reversal defendants make two principal contentions: (1) that they were not negligent; and (2) that counsel for plaintiff, in his *voir dire* examination of prospective jurors, intentionally and prejudicially conveyed the idea to the jurors that defendants were insured. Since we have concluded that the judgment must be reversed on the second ground it is not necessary to pass on defendants' first contention beyond the point of determining that the question of liability is a close one.

At approximately 6:30 p. m. on March 29, 1954, plaintiff drove up to defendants' store in Tujunga for the purpose of purchasing some groceries. He parked close to the store which is some 30 feet from the paved portion of the highway. This intervening space is a dirt area which was wet but firm since it had rained slightly and was still misting. There was a concrete porch 15 inches in height extending across the front of defendants' store. There were steps, directly in front of the store door, leading up to this porch. On this particular occasion the automobile of another customer was parked in front of the steps and close to the bottom slab. Because of this obstruction plaintiff went around to the east end of the porch which had worn smooth from people stepping up on it. Plaintiff observed nothing unusual about its surface except that it was wet. Plaintiff put his right foot on the porch, and as he was trying to raise himself his foot slipped, he lost his balance, attempted to regain it but fell backwards landing on his back on a stone. After the fall some mud was observed on the porch where plaintiff had stepped and slipped.

Plaintiff received a serious fracture of the second lumbar vertebra. He suffered severe pain and was in the Veterans Hospital for more than a month. For some weeks thereafter he was unable to do more than eat and sleep and take care of his personal needs. With the aid of a cane he walked down to the corner and back. Plaintiff had not resumed his business activities at the time of the trial which was a little more. than two years after the accident. He was not able to drive a car which was essential to his former business activities in

calling on his clientele. Defendants offered no medical testimony but rested their case upon the hospital records.

In his *voir dire* examination counsel for plaintiff asked the first 23 prospective jurors, separately, substantially the following question: "Are you or your immediate family interested as an agent, stockholder, or otherwise in the Farmers Insurance Group with the principal offices at 4680 Wilshire Boulevard, in Los Angeles?" In response to this question Mrs. Eleff, who was later accepted as a juror, stated "We have Farmers' Insurance, but we just pay to it." Then the following took place:

"Q. [by counsel for plaintiff] You do have Farmers' Insurance? A. Yes, but we don't hold stock, stockholders or nothing.

"Q. How long have you had that? A. about a year or so.

"Mr. Maslach [attorney for defendants]: Your Honor, I think such questions are improper now.

"The Court: Well, I think the objection came at the same time as the answer. The question has been answered.

"Q. By Mr. Jorgenson [attorney for plaintiff]: Well, is there anything in that situation that would prevent you from acting as a fair juror in this case? A. Never.

"     .     .     .     .     .     .     .     .     .     .

"Q. You never had any law suits over it? A. No, the fact is we are not really satisfied with Farmers' Insurance. We wish or would like to take a different one."

In response to a preliminary *voir dire* question by the court Mrs. Damask,* who was the twenty-fourth prospective juror, replied: "I think maybe I am slightly prejudiced."

"Q. [by the Court] About what? A. Well, when you carry insurance, it seems to me that you shouldn't be mutilated . . . in order to be compensated for any injury you received.

"     .     .     .     .     .     .     .     .     .     .

"Q. [by the Court] You are not assuming that anybody is insured in this care, are you? A. My Heavens, it sure was brought out that they were."

Before any evidence was taken defendants moved for a mistrial on the ground the idea of insurance had been improperly injected into the case through the *voir dire* examination of the jurors by the plaintiff's attorney. The motion was denied.

---

*Mrs. Damask was later challenged for cause by counsel for defendant but the challenge was disallowed by the court.

■ The care that must be exercised on *voir dire* examination of prospective jurors on the question of insurance is well expressed in *Robinson* v. *Wada,* 10 Cal.App.2d 5, pages 7 and 8 [51 P.2d 171] (hear. den.):

''While the probable prejudice resulting from any reference to insurance in an action for damages is universally recognized, it is likewise recognized that a plaintiff is entitled to a fair and impartial jury. Therefore the rule permitting counsel to ask in good faith whether a prospective juror is interested in a particular insurance company or in any insurance company has been established as a rule of necessity. The authorities, however, have quite definitely limited the scope of the examination along this line. Reference may be made here to the exhaustive discussion of this subject in *Arnold* v. *California Portland Cement Co.,* 41 Cal.App. 420 [183 P. 171]. The court there said on pages 425 and 426: 'But counsel must take pains to propound such questions in such a manner as not unnecessarily to convey the impression that the defendant is in fact so insured. It is misconduct on the part of counsel for plaintiff in such actions so to frame his question that it goes beyond what is reasonably necessary to serve the legitimate purpose of eliciting the facts he is entitled to adduce in order to secure a jury free from bias or prejudice, if it is also apparent that the question may fairly be said to have the effect of serving the illegitimate purpose of prejudicing the jury by fixing in their minds the idea that the defendant is protected by insurance against liability for negligence. . . . Asking a juror whether he is interested in a specified casualty company, or, generally, in any insurance company, if the question be propounded in good faith, may be necessary in order to insure the plaintiff a body of jurors unbiased by any connection in favor of the party really interested in the defense of the action. But beyond this it is neither necessary nor proper to go. It is not permitted to counsel, under the guise of testing their qualifications as jurors, to go beyond what is necessary to insure a body of unbiased jurors and seek to create the impression that an insurance company, and not the defendant in the case, will be called upon to respond to such damages as the jury may assess. When questions propounded to prospective jurors overreach the limit, they may prove unprofitable to the party asking them.' ''

The court points out that the Arnold case has been cited with approval many times and gives a list (p. 8) of such

cases. The discussion on this particular point is concluded by the quotation from *Curtis* v. *McAuliffe,* 106 Cal.App. 1, at page 12 [288 P. 675], that: "The rule established in those cases goes far enough, and we cannot approve any extension of it." The principle of the Arnold and Robinson cases (*supra*) was more recently quoted and applied in *Stevenson* v. *Link,* 128 Cal.App.2d 564, 569-571 [275 P.2d 782].

Applying these principles to the present case it is clear that on the *voir dire* examination of Mrs. Eleff counsel went beyond what was "necessary to insure a body of un-biased jurors" and that such examination served "unnecessarily to convey the impression" that defendants were insured.

When counsel ascertained that neither Mrs. Eleff nor any of the immediate members of her family were "[i]nterested in any way as a stockholder or otherwise" in the company he had adequately explored this area. He went further, however, and developed the fact that the Eleffs have Farmers' Insurance. As if that had some special significance counsel then said, "You do have Farmers' Insurance?" to which Mrs. Eleff responded "Yes, but we don't hold stock . . ." In further pursuit of this inquiry counsel then asked: "How long have you had that?" She replied: "About a year or so." At this point counsel protested that this line of examination was improper. Counsel for plaintiff, however, pursued the matter by inquiring if there was "anything in that situation that would prevent" her "from acting as a fair juror in this case" and if there had been "any law suits over it" to which he received negative replies. Counsel's pursuit of the fact the Eleffs had Farmers' Insurance, the length of time they had had such insurance, whether there was anything in that situation that would prevent her from being a fair juror in this case and whether there had been any litigation over it carries the clear and unmistakable inference and implication that the Farmers' Insurance Group was interested in this case as the insurers of the defendants. This was indeed improper. (*Arnold* v. *California Portland Cement Co., supra*; *Robinson* v. *Wada, supra*; *Stevenson* v. *Link, supra*.)

That members of the jury got the idea that defendants were insured is demonstrated by Mrs. Damask's reply to the court's inquiry if she assumed that anybody was insured in this case. She stated *"My Heavens, it sure was brought out that they were."* (Italics added.)

*Robinson* v. *Wada, supra,* is closely analogous to the prob-

lem at hand. What transpired in that case is thus stated by the court (pp. 8 and 9) : "When counsel examined Mrs. Rose M. Hoover, the following questions were asked and following answers were given: 'Q. You are not financially interested in the State Farm Mutual Insurance Company of Bloomington, Illinois? A. My car is insured in that. Q. In that company? A. Yes. . . . Q. Would the fact that your car is insured in this company, do you think that would tend or cause you to lean in their favor a little bit? A. I don't see why it would.' Counsel for appellant objected after the answer was given. The objection was sustained and the jury was admonished. In examining Mrs. Maude C. Evans, the following questions were asked and the following answers were given: 'Q. Are you or any of your family, interested financially in the State Farm Mutual Insurance Company of Bloomington, Illinois? A. I cannot say positively, Mr. Evans attends to that business, but if the line is carried by the Farmers Cooperative Exchange, I think the car is insured in that company. Q. I am almost sure that is the Farmers Inter-Exchange Insurance Company of Los Angeles, you are speaking of, at any rate no matter what it is would that have any bearing on your sitting in this action? A. No.' " The court held that "the foregoing examination went beyond what was reasonably necessary to serve the legitimate purpose for which questions may be asked regarding the possible interest of the juror in an insurance company [p. 9]."

The further question arises as to whether the misconduct was prejudicial. There are numerous cases in which judgments have been affirmed despite such misconduct where the question of liability is not close and the damages awarded were not disproportionate to the injuries received. But this is not such a case. Here the question of liability was indeed a close one. Furthermore, it is apparent from the record before us that if there is liability in this case plaintiff is entitled to recover substantially greater damages than the jury awarded. In such circumstances "The natural tendency of a line of examination that suggests to the jury that the defendant is indemnified against any judgment for damages against him is highly prejudicial to his rights, especially in a closely balanced case where the evidence otherwise would be easily sufficient on appeal to support a verdict either for the plaintiff or for the defendant. Such attempts on the part of counsel have frequently been held to be improper and prejudicial. [Citing cases.]" (*Citti* v. *Bava,* 204 Cal. 136,

139 [266 P. 954] ; *Squires* v. *Riffe,* 211 Cal. 370, 374 [295 P. 517] ; *Robinson* v. *Wada, supra,* p. 10.) We are of the opinion that on the record before us "it must be held that the misconduct of respondent's counsel in making the statements with reference to insurance [on *voir dire* examination] was so prejudicial as to constitute reversible error." (*Stevenson* v. *Link, supra,* p. 571.)

The judgment is reversed.

Moore, P. J., and Ashburn, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 1, 1957. Carter, J., was of the opinion that the petition should be granted.