[L. A. No. 27346.   In Bank.   July 7, 1965.]

GARDEN GROVE SCHOOL DISTRICT OF ORANGE COUNTY, Plaintiff and Respondent, v. JACK M. HENDLER et al., Defendants and Appellants.

Fadem & Graves, Ernest L. Graves, Jerrold A. Fadem and Gideon Kanner for Defendants and Appellants.

George F. Holden, County Counsel, Clayton H. Parker and Hayward P. LeCrone, Assistant County Counsel, for Plaintiff and Respondent.

McCOMB, J.—Defendants appeal from a judgment awarding them $73,000 after trial before a jury in a condemnation action.

*Facts*: On September 1, 1961, plaintiff filed an action to condemn property owned by defendants.

In January 1952 Mills, who owned the property at that time, entered into an option agreement with Goldring, whereby Goldring agreed to purchase the property at any time within a period of 10 years, upon six months' written notice by Mills.

In April 1961 Mills sold the property to defendants, Goldring's nominees, for $55,352.

At the trial, defendants' expert witness testified that on September 1, 1961, just a few months after defendants had acquired the property from Mills, it was worth about $120,000. The valuation was predicated upon favorable changes in zoning anticipated by the witness. Plaintiff's expert witnesses predicted a different zoning change and arrived at an estimate of $65,500. The issue was submitted to the jury, which returned a verdict of $73,000.

*Questions: First. Were defendants denied a fair trial due to the misconduct of plaintiff's attorney?*

*Yes.* Defendants contend that Mr. Meline, trial counsel for plaintiff, committed error by his prejudicial misconduct during the trial and that his misconduct was sufficient to show a miscarriage of justice.

This contention is correct. Mr. Meline's activities and remarks during the trial and in his summation to the jury were prejudicially erroneous. He conducted himself in a manner which is completely incompatible with the dignity and decorous conduct of a judicial proceeding. In achieving the introduction of certain evidence, in alluding to facts not in evidence, and in making certain representations of fact, he made promises of evidence to support or connect which he neglected to fulfill. He alluded to his personal knowledge in his summation to the jury, and he resorted to insulting and derogatory characterizations of defendants and Goldring; he appealed to the jurors' economic self-interest and provinciality and sought by snide remarks and innuendo to impugn the motives and purpose of defendants and Goldring in seeking more for the property than the value testified to by plaintiff's witnesses.[1]

---

[1]Remarks set forth in the following excerpts from the record are typical of the misconduct complained of: "Mr. Meline (in his argument to the jury): When I was in school I learned to read . . . somewhere along the first part of it and I . . . got a hold of a book . . . called 'Treasure Island,' one of Robert Louis Stevenson's better books. Gee, I liked that book. It had pirates in it, it had Long John Silver, it had pieces of eight and loot and things of that nature and really, when you think of that book and you think of this case, you begin to realize that maybe all pirates today, they don't have that kind of a hat and they don't walk with a wooden leg. Maybe they might even be a nice old man that sits here in the courtroom today that wants $120,000 for property that sold four and a half months ago for $55,000. Some people speculate in stock and some people speculate in race horses, some people speculate in land and then there are other people who I submit to you speculate in condemnation suits, and he bought this property, his attorney bought this property when he knew it was under the threat of condemnation and he is speculating on how much money he can get out of the School District, that's what he is doing in this case, because at the time he bought the property he knew, I submit to you he knew that it was under threat of condemnation.

"Mr. Fadem: Your Honor, counsel is deliberately misstating the evidence. There is not a word of evidence that anybody knew. The action wasn't filed until four and a half months later. The seller said it was only rumors. . . .

"Mr. Meline:I think that's a reasonable inference on the facts.

"The Court: The objection is overruled. I feel it's a reasonable inference. . . .

"Mr. Meline: As to his attorney, his attorney bought this property . . . There was a prior trial in which some of Goldring's holdings were being condemned——

"Mr. Fadem: Objection, Your Honor. That is an absolute misrepresentation. There has been no evidence as to whose interests were in

Defendants' counsel objected to some of the remarks and misconduct, most of which objections were overruled.

The jury awarded defendants $73,000, which was $7,500 more than the highest value placed upon the property by expert witnesses called by plaintiff but $47,000 less than the amount sought by defendants. Although it is impossible to determine simply by looking at the amount of the award whether the jury was influenced by the misconduct, the clear inference is that the jury was so influenced.

The question is not whether the award is a reasonable one, but whether it is reasonable to conclude that a verdict more favorable to defendants would have been reached but for the error. (Cal. Const., art. VI, § 4½.)

■ The determination of this question requires an examination of all relevant portions of the record. Such an examination reveals that the jury, which determined that defendants should be paid $7,500 more for their property than the highest valuation placed upon it by plaintiff's expert witnesses, was not satisfied with plaintiff's evidence. Under the circumstances, it is reasonable to conclude that in the absence of the misconduct the result would have been even more favorable to defendants. (See *Love* v. *Wolf*, 226 Cal.App.2d 378 [38 Cal.Rptr. 183], where it was conceded that there was substantial evidence to support the verdict, but because the plaintiff's attorney engaged in misconduct analogous to that presented in the instant case, the court concluded that the errors were intentional and, being prejudicial, required reversal.)

■ Second. *Was it prejudicial error for plaintiff's counsel to talk with the foreman of the jury?*

*Yes.* Plaintiff's counsel was found talking, during a recess, with the juror who later became foreman of the jury. Counsel was called into chambers and examined by the judge. Defendants then made a motion for a mistrial, which was denied.

Defendants' counsel moved to have the juror excused, and the judge asked plaintiff's counsel if he was willing to have

---

the prior trial and they were not Goldring's interests as this man addressing the Jury has said. It was an entirely separate and distinct——

" . . . . . . . . . .

"THE COURT: That objection is sustained.

"MR. MELINE: Very well, Your Honor. All right. I submit to you that this man is speculating in condemnation suits. He hires a Los Angeles attorney to come down here and an appraiser to see how much they can get.

" . . . . . . . . . .

" . . . I am telling you there is not the reasonable probability of a zoning change in the near future."

the juror excused. Plaintiff's counsel said he was not, adding that he thought the whole thing was ridiculous. The judge then said: "It's not ridiculous, you did a very, very foolish thing. Under the Code . . . I don't believe I have the power to excuse that Juror. I think everything might be much happier if you gentlemen would stipulate that the Juror be excused. If you decline to do that, we will have to proceed."

It appears that the judge erred in not granting defendants' motion to excuse the juror and replace him with an alternate. In denying the motion, he stated: "Under the Code, as I remember it, I don't believe I have the power to excuse that Juror." This was clearly error, since section 605 of the Code of Civil Procedure provides: "If at any time, whether before or after the final submission of the case to the jury, a juror dies . . . or upon other good cause shown to the court is found to be unable to perform his duty . . . the court may order him to be discharged and draw the name of an alternate. . . ."

It is clear that the judge had the discretion to dismiss the juror for this misconduct and that he erred in failing to do so.

■ Third. *Did the trial court err in admitting into evidence testimony concerning the sale from Mills to defendants four months before the condemnation date?*

*No.* Defendants point out that under *County of Los Angeles* v. *Faus,* 48 Cal.2d 672 [312 P.2d 680], evidence of a forced sale is inadmissible to determine value in a condemnation proceeding, and contend that Mills sold the property to them under financial distress and that consequently the *Faus* rule should have been applied.

The *Faus* case, however, was intended to cover the situation where the forced sale arises because of condemnation. In that case, evidence introduced by the condemner to show the value of the property sought to be condemned was based primarily upon settlements which nearby landowners had made with the condemner. It is in this context that the term "sales of a forced character" was there used.

Such was not the case when Mills sold to defendants. At that time Mills needed cash with which to complete another real estate transaction and, believing that the property he would acquire in the other transaction offered a greater potential for gain, felt under compulsion to sell the property here involved; but this is not the type of "forced sale" which would render evidence of the price paid inadmissible in a condemnation action.

Accordingly, the trial court properly allowed plaintiff to show the purchase price paid on the sale of the property to

defendants four months before the condemnation date and allowed defendants to show that Mills was motivated by financial distress to make the sale, thus leaving for the jury's determination the weight it would place upon the sales price.

■ Mr. Mills testified that since the date of the option agreement in January 1952 Mr. Goldring had had the property under lease and had paid an annual rent of $800, plus taxes, and was also required to keep the property free of weeds. He also testified that during most of that time Mr. Goldring made no use of the property.

Defendants argue that if evidence of the price they paid to Mills in April 1961 was admissible, they should have been permitted to present evidence of the rent, taxes, and upkeep expense and that the amount thereof should have been added to the $55,352 sales price in determining how much Mills received for the property.

The option agreement did not require these payments to be made, and there is no evidence that they were regarded as part of the purchase price. Under the circumstances, the trial court properly refused to admit evidence of the amount of the payments.

The judgment is reversed.

Traynor, C. J., Peters, J., Tobriner, J., Peek, J., Mosk, J., and Burke, J., concurred.