[Civ. No. 12219. Third Dist. Feb. 6, 1970.]

MARGARET A. HART, Plaintiff and Respondent, v.
WILLARD WIELT et al., Defendants and Appellants.

## COUNSEL

C. D. Matthews, Jr., Bledsoe, Smith, Cathcart, Johnson & Rogers and Robert A. Seligson for Defendants and Appellants.

A. John Merlo for Plaintiff and Respondent.

## OPINION

**REGAN, J.**—Margaret A. Hart, plaintiff, brought suit against the defendants for personal injuries incurred as the result of an automobile accident. After a trial by jury, plaintiff was awarded $28,000 in damages.

Defendants invited plaintiffs to accompany them to Reno, Nevada, in defendants' automobile. Plaintiffs accepted. It was agreed the parties would travel from Chico by way of Highway 32, drop off Mrs. Hart's daughter in Chester and proceed to Reno. The purpose of the trip was the mutual enjoyment of the parties. Before departing Mr. Hart paid to fill the gas tank.

### FACTS

Plaintiff, Mrs. Hart, and defendants had been friends for a number of years. They had taken several trips together, two of these trips being to Reno. The evidence was conflicting as to whether plaintiff (and her deceased husband)[1] and the defendants always shared travel expenses and spelled each other in the driving, or whether there was an agreement as to such. In previous times, when plaintiff and Mrs. Wielt (codefendant) took trips, the two shared expenses and driving.

---

[1]Mr. Hart was originally a plaintiff, but he died of causes not connected with the accident prior to trial. His case was dismissed at the trial-setting conference.

The accident occurred about 2 p.m. on Highway 32 going toward Chester. It was daylight and slightly cloudy or overcast. Although the road was dry when the party departed Chico, several of the passengers noticed patches of ice or "black ice" on the road prior to the accident. There were also cinders on the roadway, and there was snow piled on each side of the road.

The road the Harts and the Wielts were traveling, at a speed of 30-35 miles per hour, was described as "a mountain curvy road, defiles and canyons," consisting of one curve after another. There were no speed-limit signs along the highway; thus, the applicable speed limit at the time was 65 miles per hour, subject to the basic speed law which is always the proper speed that conditions would warrant as safe. Mr. Wielt testified he knew he might hit patches of ice on the roadway and that he did not have on chains even though he carried them.

The accident occurred on a sharp and severe curve. Wieldt testified that as he approached the crest of the hill, he took his foot off the throttle to slow down. He began the turn and then encountered ice on the roadway, causing him to slide and skid, ending up colliding with a tree. There was a total of 201 feet of curving skid marks going from one side of the road to the other.

Prior to the accident, Wielt had passed a sports car driven by one Donald Snyder. Although Snyder had noticed no erratic driving on the part of Wielt, he testified: "I thought it was odd that he passed me when he did. Other than that I do not believe he was driving in an unsafe manner." Snyder stated that the road was a narrow mountainous road, very curvy, and that there was ice on the road.

After Wielt passed Snyder, Snyder stayed about 100 yards behind Wielt, both traveling at about 30-35 miles per hour. Snyder observed the Wielt car going downhill and starting to negotiate an elongated "S" curve when it went out of control and hit the tree. The plaintiff, Mrs. Hart, suffered severe injuries.

Defendants contend the trial court committed prejudicial error in permitting the investigating police officer to state his opinion and conclusion on what a reasonable rate of speed was in and about the area of the accident and whether the driver's speed was excessive.

■■■ Officer Hugon of the California Highway Patrol was the investigating officer. He was generally qualified by counsel as being proficient in determining particular speeds for various highway conditions. Hugon was asked the following question by plaintiff's counsel: "Now based on your training and experience assuming ideal road conditions, say in the middle

of summer, no snow, not wet, what would be the reasonable speed in and about the area of the accident?"

Defense counsel objected that the question called for the conclusion of the witness. The trial court overruled the objection, but at the same time admonished the jury that it was up to the jury to make the final decision as to proper speed and also as to whether Hugon was qualified as an expert to give his opinion on speed. Officer Hugon then stated that a reasonable speed would be 25 miles per hour. Hugon testified that if the road was wet with snow on the side a reasonable speed in and about the area of the accident would be 10-15 miles per hour. In answer to another query, Hugon stated that a person driving under these conditions, in and about the area of the accident, at a speed of 30-35 miles per hour, could reasonably anticipate he might slip, slide, and have an injury accident. Defendant cites the foregoing opinion testimony as prejudicial error.

■ It is generally established that traffic officers whose duties include investigations of automobile accidents are qualified experts and may properly testify concerning their opinions as to the various factors involved in such accidents, based upon their own observations. (*Risley* v. *Lenwell* (1954) 129 Cal.App.2d 608, 631 [277 P.2d 897]; *Zelayeta* v. *Pacific Greyhound Lines* (1951) 104 Cal.App.2d 716, 723-727 [232 P.2d 572]; see Evid. Code, § 801; Witkin, Cal. Evidence (2d ed. 1966) § 412, subd. 5, pp. 372-373; § 418, p. 378.)

In *Kastner* v. *Los Angeles Met. Transit Authority* (1965) 63 Cal.2d 52, 57 [45 Cal.Rptr. 129, 403 P.2d 385], the court states: "It is equally clear that cases may occur where the opinions of trained experts in the field on this subject [of collision] will be of great assistance to the members of the jury in arriving at their conclusions. In such cases, a traffic officer who has spent years investigating accidents in which he has been required to render official reports not only as to the facts of the accidents but also as to his opinion of their causes, including his opinion, where necessary, as to the point of impact, is an expert. Necessarily, in this field much must be left to the common sense and discretion of the trial court." (See also, *People* v. *Haeussler* (1953) 41 Cal.2d 252, 260 [260 P.2d 8]; *Wells Truckways, Ltd.* v. *Cebrian* (1954) 122 Cal.App.2d 666, 676-677 [265 P.2d 557].)

■ We find no abuse of discretion. Officer Hugon had been in the Highway Patrol for 13 years, had extensive training and schooling in accident investigations (including proper speeds under various conditions), and had investigated more than one accident weekly.

In *Enos* v. *Montoya* (1958) 158 Cal.App.2d 394 [322 P.2d 472], the court found no error for the trial court to admit opinion evidence of the

highway patrolman who investigated the accident who testified to what was a reasonable and prudent speed at the curve where the accident occurred. In the instant case, as in *Enos* and *Kastner, supra,* the jurors were properly instructed they were not bound by the opinion of the witness but were free to determine the weight to which they deemed it entitled, and could reject it if in their judgment the reasons given for it were unsound.

■ Defendants next contend plaintiff and her counsel committed prejudicial error by repeatedly asking the prospective jurors on *voir dire* whether they owned stock in State Farm Mutual Automobile Insurance Company (which does not sell stock to the public), and by otherwise emphasizing the fact that State Farm was the automobile liability insurer involved in the instant case and that the defendants were insured by the company.

Section 1155 of the Evidence Code provides: "Evidence that a person was, at the time a harm was suffered by another, insured wholly or partially against loss arising from liability for that harm is inadmissible to prove negligence or other wrongdoing."[2]

Defendants first claim as error the fact that on *voir dire* examination of the prospective jurors, plaintiff's counsel posed the following question: "Do you or any member of your family or are you or any member of your family employed by the State Farm Insurance Company or do you or any of your member of your family own any stock in the State Farm Insurance Company?" Counsel for defendants made no timely objection nor requested that the jury be admonished.

■ In a personal injury action, counsel may, in good faith, ask prospective jurors whether they are interested in a particular insurance company so long as the question does not unnecessarily convey the impression that defendant is in fact insured. (*Jones* v. *Bayley* (1942) 49 Cal.App.2d 647, 659 [122 P.2d 293]; 2 Wigmore on Evidence (3d ed.) § 282a, pp. 134-135.) ■ We find no evidence of bad faith here.

■ The second instance cited by defendant occurred during plaintiff's counsel's direct examination of plaintiff regarding the various doctors who had examined plaintiff. After eliciting the fact that four doctors had examined plaintiff, the following occurred:

"Q. What about Dr. Olker? A. I had an examination with the State Farm Insurance for them."

The answer was nonresponsive and unexpected, for it is clear from later questioning that counsel was trying to elicit that plaintiff had been examined

---

[2]The Law Revision Commission Comment states that this section codifies existing law, citing *Roche* v. *Llewellyn Iron Works Co.* (1903) 140 Cal. 563 [74 P. 147].

by Dr. Oker at the behest of defense counsel. Counsel for defendants objected only on the ground the answer was not responsive. There was no request that the jury be admonished.

Later, during direct examination regarding plaintiff's medical bills, the following exchange occurred:

"Q. Is this a summary of the bills here indicated in the amount of each bill? A. These are the bills they sent me, they sent me 2 copies and I sent one to State Farm."

Defense counsel objected, stating: "There is no insurance company involved in this lawsuit" and the trial court so admonished the jury.

Again the plaintiff's reply was unexpected and unresponsive. Under the circumstances, we do not think either of the above instances constitutes error, since the answers could be characterized as either voluntary, unexpected, unresponsive or incidental. (*Hughes* v. *Quackenbush* (1934) 1 Cal.App.2d 349, 358 [37 P.2d 99]; see *Little* v. *Superior Court* (1961) 55 Cal.2d 642, 645 [12 Cal.Rptr. 481, 361 P.2d 13]; Note, 4 A.L.R.2d 761, 784.) Furthermore, the court properly admonished the jury.

■ Later on, during redirect examination of plaintiff, counsel asked Mrs. Hart who advised her to bring this suit, and Mrs. Hart replied: "Mrs. Wielt did." The question was improper, but an objection was immediately sustained. There was no request that the jury be admonished. Although this was error, in light of all the facts of the case, we deem it nonprejudicial under the circumstances here.

■ Finally, defendants object to counsel's cross-examination of defendants' private investigator culminating in the fact that such investigator had previously worked as an adjuster for the State Farm Insurance Company "which Mr. Hogan Matthews [defense counsel] is now the attorney." There was no objection made to this line of questioning nor a request that the jury be admonished.

In *Moniz* v. *Bettencourt* (1938) 24 Cal.App.2d 718, 724 [76 P.2d 535], the court states: "Facts tending to show interest, bias or motive on the part of a witness may always be brought out on cross-examination even though it may thereby be disclosed that the defendant was protected by insurance." (See also, 2 Wigmore, Evidence, § 282a, p. 135; Note, 4 A.L.R.2d 779.)

We think the cases cited by defendant are distinguishable. In *Swift* v. *Winkler* (1957) 148 Cal.App.2d 927 [307 P.2d 666], counsel went far beyond the bounds of proper inquiry as to whether a prospective juror had an interest in a particular insurance company, and the question of liability was a very close one.

In *Stevenson* v. *Link* (1954) 128 Cal.App.2d 564 [275 P.2d 782], counsel made repeated and persistent reference to "the insurance company" on *voir dire* examination of the prospective jurors. And again, the evidence was sharply conflicting on the question of liability. In *Mahnkey* v. *Bolger* (1950) 98 Cal.App.2d 628 [220 P.2d 824], although holding questions regarding insurance improper, the court declined to rule on this point and reversed on other grounds.

In concluding that there was no prejudicial error, we are well aware of the thin line that exists in this area (see *Arnold* v. *California Portland Cement Co.* (1919) 41 Cal.App. 420, 425-426 [183 P. 171], however, under the compulsion of *Sabella* v. *Southern Pac. Co.* (1969) 70 Cal.2d 311 [74 Cal.Rptr. 534, 449 P.2d 750], we feel that the line was not crossed. In *Sabella, supra,* the court, in affirming a judgment for plaintiff after a jury verdict, found plaintiff's counsel to be guilty of deplorable misconduct "which might well have been prejudicial." (P. 317.) The court calls attention to *Cope* v. *Davison* (1947) 30 Cal.2d 193, 203 [180 P.2d 873, 171 A.L.R. 667], as stated in *Sabella, supra,* 70 Cal.2d at page 317, footnote 5: "In any event, the trial court impliedly found no misconduct, or at least no prejudice, when ruling on the motion for new trial. 'A trial judge is in a better position than an appellate court to determine whether a verdict resulted wholly, or in part, from the asserted misconduct of counsel and his conclusion in the matter will not be disturbed unless, under all the circumstances, it is plainly wrong.' "

" 'Generally a claim of misconduct is entitled to no consideration on appeal unless the record shows a timely and proper objection and a request that the jury be admonished.' [Citations.] ' "As the effect of misconduct can ordinarily be removed by an instruction to the jury to disregard it, it is generally essential, in order that such act be reviewed on appeal, that it shall first be called to the attention of the trial court at the time, to give the court an opportunity to so act in the premises, if possible, as to correct the error and avoid a mistrial. Where the action of the court is not thus invoked, the alleged misconduct will not be considered on appeal, if an admonition to the jury would have removed the effect." ' [Citation.] ' "It is only in extreme cases that the court, when acting promptly and speaking clearly and directly on the subject, cannot, by instructing the jury to disregard such matters, correct the impropriety of the act of counsel and remove any effect his conduct or remarks would otherwise have." [Citation.] . . . [W]e are aware of no California case wherein a plaintiff's verdict was

reversed for misconduct during his counsel's argument in the lack of timely objections and a request that the jury be admonished where such admonition could be effective.' [Citation.]

"This case is neither precisely like *Horn* v. *Atchison T. & S. F. Ry. Co.,* 61 Cal.2d 602 [39 Cal.Rptr. 721, 394 P.2d 561], *supra,* in which no objection or request for admonition was made until after conclusion of the closing argument (and relief was thus denied); nor like *Hoffman* v. *Brandt* (1966) 65 Cal.2d 549 [55 Cal.Rptr. 417, 421 P.2d 425], in which an admonition, especially as there given by the trial court, could not have been effective under the circumstances; nor like *Love* v. *Wolff* (1964) 226 Cal. App.2d 378 [38 Cal.Rptr. 183], in which admonition of the jury was requested several times but disregarded by the trial court. Here defendant remained silent as to all but one line of argument, and as to the latter he objected but failed at any time to request an admonition of the jury to disregard the remarks. Under the circumstances we conclude that defendant must be denied relief. (See *Estate of Hart* (1951) 107 Cal.App.2d 60, 70 [236 P.2d 884].)" (*Sabella* v. *Southern Pac. Co., supra,* 70 Cal.2d at p. 319.)

In the case before us the defendant's motion for a new trial was denied. Also, the defendant's motion for a judgment notwithstanding a verdict for plaintiff was denied and plaintiff was awarded her costs incurred. The trial court impliedly found no misconduct, or at least no prejudice when ruling on these motions.

Finally *Sabella, supra,* states (at pp. 320-321):

"We emphasize again that the particular language used by counsel and the form or lack of objection by defendant in this case are not meant to serve as invariable guidelines for future reference. Each case must ultimately rest upon a court's view of the overall record, taking into account such factors, inter alia, as the nature and seriousness of the remarks and misconduct, the general atmosphere, including the judge's control of the trial, the likelihood of prejudicing the jury, and the efficacy of objection or admonition under all the circumstances.

"Our conclusions should in no way be interpreted as condoning the deplorable conduct of plaintiff's counsel. However, punishment of counsel to the detriment of his client is not the function of the court. [Citation.] Intemperate and unprofessional conduct by counsel as is here involved runs a grave and unjustifiable risk of sacrificing an otherwise sound case for recovery, and as such is a disservice to a litigant. These same tactics, in another context, would likely result in a reversal. However, under the

facts and circumstances of this case, we conclude that the award to plaintiff, as modified by the remittitur, is justified."

During the course of plaintiff's counsel's opening argument in the case before us, he stated: "I thought she [plaintiff] was very strong, she didn't break down. So I think she did better than I thought she would and she was stronger than I thought she would be but she still is on charity and she has never been on charity in her life. I don't think she should be on charity because I feel the responsibility is upon the defendant to leave her on charity that she must now receive—which she now receives. The responsibility is upon the defendant who is responsible for her condition and the charity should end by an award sufficiently large against the defendant so she can put it out at reasonable interest and relieve herself of being a burden on the taxpayers—she shouldn't be a taxpayers' burden and I can assure you . . ."

Defense counsel at this point objected and cited misconduct of counsel. The court immediately admonished the jury that the case was to be decided upon the facts and law, and not upon emotional feelings.

■ In an action for damages, a showing of poverty of the plaintiff is highly prejudicial; if such evidence is deliberately introduced, it may constitute reversible error. (*Hoffman* v. *Brandt* (1966) 65 Cal.2d 549, 552-553 [55 Cal.Rptr. 417, 421 P.2d 425]; Witkin, Cal. Evidence (2d ed. 1966) § 376, p. 334.)

However, the statements of counsel must be put in context. During the trial, and without objection the following matters were placed into evidence: Plaintiff's present source of income was $165 from state disability and $69 from Social Security due to being totally disabled from a leg injury sustained in the accident and subsequent nervous problems; she was unable to have an eye problem attended to because she had no money. ■ Thus, it could be argued that counsel was merely commenting upon the evidence produced at trial. Nevertheless, we think the references to "charity" and "a burden on the taxpayers" went too far and were improper.

In seeking a reversal on the ground of prejudicial misconduct, defendants rely on *Hoffman* v. *Brandt, supra,* 65 Cal.2d 549. In *Hoffman,* plaintiff, a 20-year-old woman, was in an automobile collision with defendant, who was 69 years of age. A strong case for recovery was shown, but the verdict went for defendant. The court reversed on the basis that defense counsel was guilty of misconduct. In his closing argument counsel stated that the amount demanded would send his client to a home for the indigent, and that this could be considered by the jury in reaching its verdict. This deliberate suggestion of poverty was improper *and* false, since defendant was

in fact covered by insurance. The judge's equivocal admonition, i.e., that the argument was not evidence, did not cure the deliberate and highly prejudicial error.

*Hoffman* recognizes, however, that the effect of an admonition upon such misconduct depends upon the facts of each case. We think *Hoffman* is distinguishable from the present case and that the admonition cured the error. When the argument was objected to, the court immediately admonished the jury that the case was to be decided upon the facts and law, not on appeals to emotions, which are improper. Thus, there is no equivocal admonition as in *Hoffman,* nor was there false argument such as in *Hoffman.* After the trial court's admonition, counsel immediately dropped the subject. We find the error to be nonprejudicial.

Defendant next assigns as error the fact that the trial court declined to instruct the jury that plaintiff was a guest, but rather submitted the issue of whether plaintiff was a guest or a passenger to the jury.

The jury was fully instructed with regard to the California guest law. (Veh. Code, § 17158.) There were no special verdicts. Thus, necessarily implied in the general verdict was a jury finding either that plaintiff was a passenger rather than a guest or that defendants were guilty of misconduct.

 Whether a person riding with another is a passenger or guest is to be determined by deciding whether the rider conferred a benefit on the driver in return for the ride. (*Martinez* v. *Southern Pac. Co.* (1955) 45 Cal.2d 244, 250 [288 P.2d 868].) As a general rule, the question is for the jury; once the jury has determined the question, the province of the appellate court is simply to examine the record to determine whether the finding is substantially supported. (*Ibid.*)

Here there was evidence, although conflicting, that the Harts and Wielts had shared expenses and driving chores prior to the trip in question, and there is at least an inference that this trip was to be no different since Mr. Hart paid for the gas prior to departure.

 We believe that there was substantial evidence from which the jury could reasonably infer that defendants' motivation in offering the ride was plaintiff's former conduct in sharing expenses and the driving, and thus there was no error in submitting the passenger-guest issue to the jury. (Cf. *Nevarez* v. *Carrasco* (1969) 1 Cal.3d 518 [82 Cal.Rptr. 721, 462 P.2d 577].)

Defendants rely upon *McCann* v. *Hoffman* (1937) 9 Cal.2d 279 [70 P.2d 909]. In that case, however, there had been no previous joint trips,

and there was no understanding as to the sharing of driving. We find *McCann* to be distinguishable.

Finally, we are convinced that the facts in this case present substantial evidence that Mr. Wielt was guilty of willful misconduct in attempting to negotiate the curve at the indicated speed under the weather and road conditions that existed at the time. (See *Williams* v. *Carr* (1968) 68 Cal.2d 579, 584 [68 Cal.Rptr. 305, 440 P.2d 505]; *Meyer* v. *Blackman* (1963) 59 Cal.2d 668, 677 [31 Cal.Rptr. 36, 381 P.2d 916].)

The judgment is affirmed.

Janes, J., concurred.

**FRIEDMAN, Acting P. J.**—I dissent. A trial is an entity. The cumulative effect of a group of improprieties cannot be assessed by measuring the quantum of prejudice attributable to each separate one. In weighing a compound of misconduct, "[e]ach case must ultimately rest upon a court's view of the overall record, taking into account such factors, inter alia, as the nature and seriousness of the remarks and misconduct, the general atmosphere, including the judge's control, of the trial, the likelihood of prejudicing the jury, and the efficacy of objection or admonition under all the circumstances." (*Sabella* v. *Southern Pac. Co.,* 70 Cal.2d 311, 320 [74 Cal.Rptr. 534, 449 P.2d 750].)

It is impossible to read the present record without inferring a deliberate program of plaintiff's attorney to brainwash the jury into a verdict motivated by awareness that Mr. and Mrs. Wielt were only nominal defendants, who had invited plaintiff (their long-time friend) to collect from State Farm Mutual Insurance Company, the real defendant, an award which would take her off the charity rolls and off the backs of the taxpayers (such as the jurors).

This program had its inception in the *voir dire* question inquiring into the panel members' interest in the insurance company. Viewed in isolation, that question was innocuous, permissible if asked "in good faith." (2 Witkin, Cal. Procedure (1954) p. 1738.) Viewed as the first step in a sequence, it takes on harsher coloration. Not knowing what was to follow, defense counsel could not be expected to object to this unobjectionable *voir dire* inquiry.

The second step was Mrs. Hart's gratuitous pair of references to State Farm. These nonresponsive references may have been unexpected and, in

fairness to plaintiff's attorney, we should not assume that they were the product of coaching. However produced, they did contribute to the result.

Third was the grossly irrelevant, grossly improper, question which elicited the response that Mrs. Wielt had advised plaintiff to file the lawsuit. This question and its answer were so utterly and blatantly illicit that no innocent motive can be ascribed to them.

Fourth was the cross-examination of the defense investigator, through which the jury was told that defense counsel, Mr. Hogan Matthews, was really in court as the attorney for the insurance company. The question cannot be justified as an inquiry into bias, for the investigator's former employment by the insurance company had nothing to do with Mr. Matthews' status as its attorney.

Fifth was the blatantly impermissible appeal to the jury to award damages in order to take Mrs. Hart off charity and off the backs of the taxpayers. No express appeal was needed to have the jurors identify themselves as taxpayers. They would do that of their own accord.

California courts do not indulge in the naive assumption that uncolored awareness of insurance coverage will lead the jurors into an excessive verdict. (*Causey* v. *Cornelius,* 164 Cal.App.2d 269, 276-280 [330 P.2d 468].) The vice of the present trial is the plaintiff's attempt to supplant legitimate decisional norms with a set of illegitimate jury motivations, that is, an emotional bias compounded out of sympathy for the destitute plaintiff, indifference to the acquiescent and even friendly defendants and awareness of the big, rich, impersonal target which would bear the cost.

For all that any of us judges know, the attempt may have been successful. I have trouble with the notion that the appellate court should accept the trial court's determination of misconduct's effect unless it is "plainly wrong." (See *Sabella* v. *Southern Pac. Co., supra,* 70 Cal.App.2d at p. 317, fn. 5.) The determination is too subjective, involving variables of tolerance. Moreover, trial judges have no more access to jury room dialogues than do appellate judges.

There were enough objections and requests for admonition to demonstrate that defense counsel was not indulging in silence for the purpose of gambling on the verdict. (Cf. *Sabella* v. *Southern Pac. Co., supra,* 70 Cal.App.2d at pp. 318-319; *Horn* v. *Atchison T. & S. F. Ry. Co.,* 61 Cal.2d 602, 610 [39 Cal.Rptr. 721, 394 P.2d 561].) The cumulative prejudice from the combination of improprieties was such that no admoni-

tion could cure it. (*Hoffman* v. *Brandt,* 65 Cal.2d 549, 553 [55 Cal.Rptr. 417, 421 P.2d 425].)

In our exalted moments we of the bench and bar are wont to describe a trial as a "search for truth." Forensic hijinks such as the present make a mockery of that description. The financial stakes in personal injury trials are high. The participants are engaged in relentless struggle. Appellate wrist-slappings are not going to stop the unseemly stagecraft which characterizes many jury trials. Seen in the perspective of social history, the personal injury settlement-and-trial industry may be an expensive anachronism whose overhead society can ill afford. Even within the existing rules of the game, judges and lawyers should not forget the judgments of history.

I agree that we must not deprive litigants of favorable verdicts in order to punish counsel. (*Sabella* v. *Southern Pac. Co., supra,* 70 Cal.2d at pp. 320-321.) I am conscious too that article VI, section 13, of the California Constitution permits reversal only where justice has miscarried. (*Garden Grove School Dist.* v. *Hendler,* 63 Cal.2d 141, 144 [45 Cal.Rptr. 313, 403 P.2d 721].)

In criminal cases it is recognized that a judgment reached through an unfair trial is a denial of due process, which cannot be shielded by article VI, section 13. (*People* v. *Lyons,* 47 Cal.2d 311, 324 [303 P.2d 329]; *People* v. *Sarazzawski,* 27 Cal.2d 7, 11 [161 P.2d 934].) Since the concept of due process applies to property as well as life and liberty, I see no reason why this salutary concept of appellate control cannot hold sway as a means of ordering retrials in unfairly tried civil cases. I would reverse.

A petition for a rehearing was denied March 2, 1970. Friedman, J., was of the opinion that the petition should be granted. Appellants' petition for a hearing by the Supreme Court was denied April 1, 1970.