Filed 4/30/14  P. v. Landeros CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C072553 |
| v. | (Super. Ct. No. 12F01176) |
| DAVID BRANDON LANDEROS, | |
| Defendant and Appellant. | |

Defendant David Brandon Landeros, heavily intoxicated and driving down I Street in Sacramento at a high rate of speed, crashed into two vehicles.  After clipping the first car as he passed it on the right, causing minor damage to the tail light, he crashed into a second car that was parked in front of the Sacramento County Jail, sending this car onto the sidewalk and into a tree.  Roxanne Contreras and her husband's grandparents, Manuel and Ernestine Contreras, were in the second car.  Manuel and Ernestine sustained serious injuries.  Defendant was convicted by jury of causing bodily injury while driving under the influence of alcohol (Count 1), causing bodily injury while driving with a blood-alcohol concentration of 0.08 percent or more (Count 2), and driving with a suspended license (Count 3).  With respect to Counts 1 and 2, the jury found various great bodily injury enhancement allegations to be true and also found defendant caused bodily injury to more than one victim.  With respect to Count 2, the jury also found defendant's blood-

1

alcohol concentration was 0.15 percent or more. The trial court sentenced defendant to serve an aggregate prison term of 13 years and imposed other orders.

On appeal, defendant contends the trial court prejudicially erred by allowing a police officer to testify to her opinion that he drove at an unsafe speed and caused the accident because "these issues were for the jury to decide." We conclude the trial court did not abuse its discretion in allowing this testimony. We therefore affirm the judgment.

FACTS

During the early morning hours of February 11, 2012, defendant left a nightclub in Midtown Sacramento and drove down I Street in a white Mercedes. He was heavily intoxicated and driving at a high rate of speed, "probably like 70" miles per hour, according to David McClure, the driver of the first car he crashed into.

McClure was driving a black Mercedes in the middle lane at about 30 miles per hour. As McClure approached 7th Street, defendant passed him on the right and clipped his tail light in the process. McClure "felt like [he] had been hit," continued through 7th Street, and pulled over to the left side of I Street. Before McClure could park, he witnessed defendant's car crash into a silver Toyota that was parked in front of the Sacramento County Jail on the right side of I Street. The impact sent the Toyota onto the sidewalk and into a tree in front of the jail.

Roxanne Contreras and her husband's grandparents, Manuel and Ernestine Contreras, were in the Toyota when the accident occurred. They had parked moments before. Manuel was driving; Roxanne and Ernestine were seated in the back seat. All three suffered injuries and were taken by ambulance to University of California at Davis Medical Center.

Ernestine's injuries were the most severe. The treating neurosurgeon explained: "She had a bleed on the right side of the head that was pushing on her brain, and there was quite a bit of swelling from the impact to her brain." This injury resulted in her being in a comatose state when she arrived at the hospital and required a portion of her

2

cranium to be temporarily removed to relieve the pressure on her brain. Ernestine also had a spinal fracture between the fifth and sixth cervical vertebrae, requiring placement of a titanium plate and screws to stabilize her spine, as well as pelvis and rib fractures. She remained at the hospital for about two months. Manuel, 84 years old, also sustained serious injuries. He had a spinal fracture of the twelfth thoracic vertebra, requiring placement of rods and screws, as well as blunt trauma to the head and a left fibula fracture. Manuel remained at the hospital for about two weeks. Roxanne's injuries were less serious. She was released after 24 hours with bruises on her arms and legs and pain in her tailbone that lasted about a month.

After the accident, defendant got out of his car and sat on a cement bench in front of the jail, where he was contacted by Officer Matt Hoffman of the Sacramento Police Department. Officer Hoffman immediately "smelled a strong odor of alcoholic content coming from his person." Defendant's speech was slurred and his eyes were "bloodshot and very watery." He admitted to driving the white Mercedes involved in the accident and said he had one drink. When asked to produce a driver's license, defendant responded that "he did not have a driver's license because it was suspended." At this point, Officer Hoffman asked defendant some "preliminary alcohol screening questions" and continued with a field sobriety test, the results of which indicated "there was a high volume of alcohol in his blood." Officer Hoffman then administered a field breath test, which confirmed "there was a significant amount of alcohol in his system," and placed defendant under arrest for driving under the influence. Defendant's blood was drawn around 3:20 a.m., about an hour after the accident. His blood alcohol concentration was 0.33 percent, over four times the legal limit.

The accident was captured on the jail's video surveillance system. The footage was played for the jury during Officer Tobi Hitchcock's testimony. She conducted an accident investigation, which included personally taking a statement from Manuel, obtaining the statements taken from defendant and McClure, observing the vehicles

3

involved in the crash, taking measurements, and viewing the surveillance video. Officer Hitchcock concluded defendant's speed at the time of the accident was "unsafe for the conditions" and his speed caused the accident.

## DISCUSSION

Defendant contends the trial court prejudicially erred by allowing Officer Hitchcock to testify to her opinion defendant drove at an unsafe speed and his speed caused the accident because "these issues were for the jury to decide." We disagree.

### A.

### *Additional Background*

Defendant was charged in Counts 1 and 2 with causing bodily injury while driving under the influence of alcohol and causing bodily injury while driving with a blood-alcohol concentration of 0.08 percent or more. Vehicle Code section 23153, subdivision (a), provides: "It is unlawful for a person, while under the influence of any alcoholic beverage to drive a vehicle *and concurrently do any act forbidden by law, or neglect any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver.*" (Italics added.) Similarly, subdivision (b) of this section provides: "It is unlawful for a person, while having 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle *and concurrently do any act forbidden by law, or neglect any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver.*" (Veh. Code, § 23153, subd. (b), italics added.) Thus, in addition to determining whether or not defendant drove while under the influence of alcohol and/or while having a blood-alcohol concentration of 0.08 percent or more, the jury was required to determine (1) whether or not he did an act forbidden by law while driving the vehicle (i.e., driving at an unsafe speed), and if so, (2) whether or not this act caused bodily injury to the victims.

During Officer Hitchcock's testimony, she was asked whether she had formed an opinion concerning the speed of defendant's car based on her review of the surveillance

4

video. Defense counsel interjected: "I am going to object to the line of questioning *as to foundation*. And so I don't drive everyone nuts, I am going to just ask there to be an ongoing objection, because we seem to be getting into it anyway." (Italics added.) The trial court responded: "And there is nothing to object to yet here." Addressing the prosecutor, the trial court stated: "I want you to rephrase this question. You are setting up a foundation of does she have an opinion, but I want to know what opinion you are going to be asking her; in other words, the scope of the opinion." The prosecutor responded: "I am going to ask her for the opinion of whether the speed contributed to the causation of the accident." Noting defendant's "continuing objection," the trial court ruled: "All right. I'll allow that." Officer Hitchcock then testified she determined the accident was caused by defendant driving at an unsafe speed.

## B.

### *Forfeiture*

Defendant's argument on appeal is not that Officer Hitchcock's opinion lacked foundation. Instead, defendant contends it "usurped the jury's function of determining each element of the crime." The Attorney General contends the claim is forfeited because defendant did not object to Officer Hitchcock's testimony on this basis at trial. (See *People v. Dykes* (2009) 46 Cal.4th 731, 756 ["trial counsel's failure to object to claimed evidentiary error on the same ground asserted on appeal results in a forfeiture of the issue on appeal"].) In response, defendant argues any objection to Officer Hitchcock's testimony on the basis that her opinion invaded the province of the jury would have been futile because, despite his limited objection, the trial court asked the prosecutor what the opinion would be and ruled the opinion admissible. (See *People v. Wilson* (2008) 44 Cal.4th 758, 793 ["litigant need not object . . . if doing so would be futile"].) He also notes we have "discretion to consider issues that have not been formally preserved for review." Finally, in the alternative, defendant asserts his trial

5

counsel provided constitutionally deficient assistance by failing to object to Officer Hitchcock's testimony on the ground now asserted on appeal.

Defendant clearly did not object to Officer Hitchcock's testimony on the same ground asserted on appeal. However, the trial court did not simply overrule the foundation objection and allow the testimony, but instead asked the prosecutor to reveal the substance of Officer Hitchcock's proposed testimony and ruled that her opinion regarding whether defendant's speed caused the accident would be admitted notwithstanding defendant's "continuing objection." The question is whether this ruling would have indicated to defense counsel that a further objection on the basis of improper opinion would be futile. We need not decide the issue. Because defendant's alternative claim of ineffective assistance of counsel would require consideration of the merits in determining whether counsel's performance fell below an objective standard of reasonableness, we assume for purposes of this opinion the claim is preserved for review and reach the merits.

## C.

### *Merits*

"It is generally established that traffic officers whose duties include investigations of automobile accidents are qualified experts and may properly testify concerning their opinions as to the various factors involved in such accidents, based upon their own observations." (*Hart v. Wielt* (1970) 4 Cal.App.3d 224, 229 (*Hart*).) Such testimony "is not objectionable because it embraces the ultimate issue to be decided by the trier of fact." (Evid. Code, § 805.)

"However, the admissibility of opinion evidence that embraces an ultimate issue in a case does not bestow upon an expert carte blanche to express any opinion he or she wishes." (*Summers v. A.L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1178 (*Summers*).) For example, "an expert's opinion . . . is not admissible if it invades the province of the jury to decide a case. 'Undoubtedly there is a kind of statement by the witness which

6

amounts to no more than an expression of his [or her] general belief as to how the case should be decided or as to the amount of unliquidated damages which should be given. It is believed all courts would exclude such extreme expressions. There is no necessity for this kind of evidence; to receive it would tend to suggest that the judge and jury may shift responsibility for decision to the witnesses; and in any event it is wholly without value to the trier of fact in reaching a decision.' " (*Id*. at pp. 1182-1183, quoting 1 McCormick on Evidence (4th ed. 1992) § 12, p. 47.) "Expert opinions which invade the province of the jury are not excluded because they embrace an ultimate issue, but because they are not helpful (or perhaps too helpful). '[T]he rationale for admitting opinion testimony is that it will assist the jury in reaching a conclusion called for by the case. "Where the jury is just as competent as the expert to consider and weigh the evidence and draw the necessary conclusions, then the need for expert testimony evaporates." [Citation.]' (*People v. Torres* (1995) 33 Cal.App.4th 37, 47 [39 Cal.Rptr.2d 103]; see 1 McCormick on Evidence, *supra,* § 12, p. 49, fn. 11 ['The fact that an opinion or inference is not objectionable because it embraces an ultimate issue does not mean, however, that all opinions embracing the ultimate issue are admissible. . . . Thus, an opinion that plaintiff should win is rejected as not helpful'].) In other words, when an expert's opinion amounts to nothing more than an expression of his or her belief on how a case should be decided, it does not *aid* the jurors, it *supplants* them." (*Summers*, *supra*, 69 Cal.App.4th at p. 1183.)

We review the trial court's decision to allow Officer Hitchcock's expert opinion testimony for abuse of discretion. (*People v. Rowland* (1992) 4 Cal.4th 238, 266; *Kastner v. Los Angeles Metropolitan Transit Authority* (1965) 63 Cal.2d 52, 57 ["in this field much must be left to the common sense and discretion of the trial court"].)

In *Hart*, *supra*, 4 Cal.App.3d 224, we concluded there was no abuse of discretion where the trial court allowed "the investigating police officer to state his opinion and conclusion on what a reasonable rate of speed was in and about the area of the accident

7

and whether the driver's speed was excessive." (*Id*. at p. 228.)  Similarly, in *Enos v. Montoya* (1958) 158 Cal.App.2d 394 (*Enos*), the First District Court of Appeal concluded there was no abuse of discretion where the trial court allowed "opinion evidence of the California highway patrolman who investigated the accident as to what was a reasonable or prudent speed at the curve where the accident occurred." (*Id*. at p. 398.)  In neither case was the expert's opinion merely an expression of his belief as to how the case should be decided.  And in both cases, "the jurors were properly instructed they were not bound by the opinion of the witness but were free to determine the weight to which they deemed it entitled, and could reject it if in their judgment the reasons given for it were unsound." (*Hart*, *supra*, 4 Cal.App.3d at p. 230; *Enos*, *supra*, 158 Cal.App.2d at p. 399; see also *People v. Cole* (1956) 47 Cal.2d 99, 105 ["The jurors, of course, were not bound by the opinion of the witness but were free to determine the weight to which it was entitled and to disregard it if they found it to be unreasonable, and they were so instructed"].)

Here, like *Hart* and *Enos*, Officer Hitchcock provided useful testimony concerning defendant's speed at the time of the accident.  She also testified to her opinion that this speed contributed to causing the accident.  While these opinions embraced ultimate issues, they did not usurp the role of the jury.  Indeed, also like *Hart* and *Enos*, the trial court specifically instructed the jury:  "Witnesses were allowed to testify as experts and to give opinions.  You must consider the opinions, *but you are not required to accept them as true or correct*.  The meaning and importance of any opinion are for you to decide.  [¶]  In evaluating the believability of an expert witness, follow the instructions about the believability of witnesses generally.  In addition, consider the expert's knowledge, skill, experience, training and education, the reasons the expert gave for any opinion, and the facts or information on which the expert relied in reaching that opinion.  [¶]  You must decide whether the information on which the expert relied was true and accurate.  You may disregard any opinion that you find unbelievable, unreasonable, or unsupported by the evidence." (Italics added.)  There was no abuse of discretion.

Nor are we persuaded by defendant's reliance on *Summers*, *supra*, 69 Cal.App.4th 1155. There, the Fifth District Court of Appeal held expert opinion testimony from an attorney (Anderson) in a wrongful death case crossed the line between aiding and supplanting the jury. The death occurred when the decedent, Summers, was involved in an accident with a truck pulling two trailers of corn. Two of the defendants in the lawsuit were Cotton and Gilbert. Cotton owned the truck and trailers; Gilbert owned the corn. (*Id*. at pp. 1159-1160.) At trial, "Anderson opined that Gilbert had a nondelegable duty; Cotton was hauling illegally; Gilbert's contracts with Cotton were illegal; Gilbert was legally required to be registered as a contract carrier rather than a private carrier; and Gilbert was *liable* for Cotton's acts under the doctrine of nondelegable duty, respondeat superior and negligent hiring of an incompetent contractor. Anderson even pulled out his proverbial crystal ball and predicted what future Courts of Appeal would do with respect to the current regulation of transportation in California." (*Id*. at p. 1160.) After holding most of Anderson's testimony was not admissible because it improperly expounded upon the law and thereby usurped the role of the trial court (*id*. at pp. 1184-1185), the court went on to hold: "Anderson's opinion that Gilbert was *liable* for Cotton's conduct was not admissible because it went beyond merely addressing an ultimate issue. Anderson's 'expert opinion' was nothing more than an attempt to direct the jury to the ultimate conclusion they should reach—Gilbert must be held liable for damages suffered by plaintiffs as the result of decedent's death. This opinion is not helpful; it is an attempt by the witness to usurp the role of the jury in weighing the evidence and drawing the appropriate conclusions. Reading Anderson's testimony in its entirety, we conclude that he was *advocating*, not *testifying*. In essence, cloaked with the impressive mantle of 'expert,' Anderson made plaintiff's closing argument from the witness stand. This is a misuse of expert witnesses, and renders his testimony inadmissible under Evidence Code section 801." (*Id*. at p. 1185.)

This case is not *Summers*.  Officer Hitchcock's testimony was not merely an attempt to direct the jury how to decide the case.  Nor was she advocating from the witness stand.  She offered her opinion as to defendant's speed at the time of the accident and whether his speed caused the accident.  While her testimony embraced ultimate issues to be decided by the jury, it did not invade the province of the jury to decide the case.  We conclude the trial court did not abuse its discretion in allowing the challenged testimony.

DISPOSITION

The judgment is affirmed.

      HOCH    , J.

We concur:

      RAYE    , P. J.

      BUTZ    , J.