Filed 5/14/19; Certified for Publication 6/5/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LAOSD ASBESTOS CASES | B287831 |
| | (JCCP No. 4674) |
| JIMMY METTIAS et al., | |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC538462) |
| v. | |
| THE PEP BOYS MANNY MOE & JACK OF CALIFORNIA et al. | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, James H. Kaddo, Judge.  Affirmed.

Dean Omar Branham, Benjamin H. Adams, Ka'Leya Q. Hardin; Farrise Law Firm, Simona A. Farrise and Sharon J. Arkin for Plaintiffs and Appellants.

Dentons US, Lisa L. Oberg, Jennifer J. Lee, Frank K. Berfield, Emily K. Ayers and Jules S. Zeman for Defendants and Respondents.

Philip and Febi Mettias, husband and wife, died from complications associated with mesothelioma (Philip in 2013, Febi in 2014), a cancer caused by asbestos exposure. Their adult children, plaintiffs Nancy Basta, Jimmy Mettias, and Mark Mettias, brought the instant wrongful death action against various defendants. By the time of trial, only two defendants remained, Honeywell International, Inc. (Honeywell) and The Pep Boys—Manny, Moe & Jack (Pep Boys). Plaintiffs pursued causes of action for strict product liability (premised on failure to warn and design defect/consumer expectation theories) and negligence. As here relevant, plaintiffs' theory at trial was that Philip performed perhaps as many as 24 brake repairs on the family Chrysler Lebaron in the late 1980's using asbestos-containing Bendix brake pads, which were made by Honeywell and which he purchased at the Pep Boys store located in Victorville, California. Plaintiffs presented expert testimony that Philip's exposure to asbestos from those repairs, and Febi's exposure from laundering the clothes he wore while making those repairs, contributed to their contracting mesothelioma.

The jury returned a special verdict in favor of Honeywell and Pep Boys. Plaintiffs appeal the verdict solely as to Pep Boys.[1] They make two contentions: (1) the trial court erred in not giving CACI Nos. 400 and 401, which are general negligence instructions, in addition to CACI Nos. 1220, 1221, and 1222 which are negligence instructions specifically

---

[1]     Appellants filed a notice of appeal as to the judgment in favor of Honeywell, but in their opening brief raised no issues as to Honeywell, and we granted Honeywell's motion to dismiss the appeal as to it.

adapted for alleged negligence by (among others) a supplier of a defective product; and (2) certain misstatements by the court in reading the instructions to the jury prejudiced the outcome. We disagree with their contentions and affirm.

## BACKGROUND

*Evidence*[2]

Philip and Febi, along with their older son Jimmy and daughter Nancy, moved from Cleveland to Apple Valley, California, during the summer of 1986 or 1987. They drove in their family car, a Chrysler Lebaron, which Philip had purchased new. Jimmy had just finished kindergarten; he started first grade after arriving in Apple Valley. The Lebaron was the only family car for about four years, until Philip bought a second car, a Ford Taurus.

According to the Vehicle Manufacturer's Association specifications, the Chrysler Lebaron for model years 1984-1987 (the years that would encompass the model purchased by Philip) had original asbestos-containing rear brakes supplied by Bendix. One of

---

[2] Because we resolve this case largely on the absence of substantial evidence to support plaintiffs' request for general negligence instructions, we base our evidentiary summary on plaintiff's evidence. We note that Pep Boys produced significant defense evidence (none of which is referenced in appellant's briefing) tending to prove that it was unlikely Philip contracted mesothelioma from his brake repairs, and that Philip and Febi had been exposed to crocidolite asbestos for many years before emigrating to the United States from Egypt (they lived in an area in Cairo near an operating asbestos-pipe factory which had a documented unusually high rate of mesothelioma).

plaintiffs' expert witnesses, Dr. William Longo, an engineer, testified that the Lebaron would require that or similar brand asbestos-containing rear brakes as replacements.

Honeywell manufactured Bendix brakes and supplied them to, among other retailers, Pep Boys. According to Joel Cohen, the corporate representative for Honeywell, Bendix brakes contained asbestos until 1983.[3] Dr. Longo testified that he examined various sets of Bendix brake drums manufactured in different unspecified years. Each set of brakes tested contained chrysotile asbestos contaminated with trace amounts of tremolite asbestos. He did not know if those brakes were manufactured before or after 1987.

Pep Boys Senior Vice President Joe Cirelli testified that Pep Boys sold Bendix brake products, although he could not recall the first time he saw a Bendix product at a Pep Boys' store. Lilia Magana, a long-time employee at the Pep Boys store on Washington Boulevard in Los Angeles, testified that her store sold Bendix brakes from 1983 to 1994. Magana did not recall ever seeing an asbestos warning on the boxes of Bendix brakes, and she was not informed that brakes sold by Pep Boys contained asbestos.

In the years from 1987 to 1989, while the Mettias family was living in Apple Valley, Jimmy Mettias was six to seven years old. During that period, he witnessed his father performing what he later (as an older child) learned was brake work on the Lebaron. His father

---

[3] He also testified that beginning in 1973, Honeywell put an asbestos warning on the brake cartons.

would use his breath to blow out the brake area and wipe it with a rag to see if the brakes needed to be changed. This process would create some dust. If the brakes needed changing, he would remove old brakes and install new ones. Before putting the new brakes on the car, he would use sand paper to sand them for a couple of minutes. The sanding created dust that his father appeared to breath. He believed that his father changed the brakes "at least a couple of times a year," though at his deposition he testified that he remembered only three brake jobs on the Lebaron from approximately 1987 to 1989.

At that young age, Philip did not go with his father to get replacement brakes and he did not know the brand of brakes his father purchased and used. However, beginning in the early 1990's, Jimmy began accompanying his father to the Pep Boys store on Seventh Street in Victorville to buy automotive parts, including brakes. According to Jimmy, Philip would ask for Bendix brakes. Jimmy saw the boxes that the brakes came in, and did not see any warnings on the boxes or the brakes.

Mark Mettias, the Mettiases' youngest son (born in 1990), testified that starting in 2002, he witnessed his father do brake repairs on the family's vehicles, including the Lebaron (he remembered a total of seven vehicles during that period). The repairs occurred "frequently," that is, he felt "like every few months." In the process, his father would remove and sand the brake pads. Mark accompanied his father to the Pep Boys store in Victorville to buy car parts. His father would always ask for Bendix brake products. He could not say how many times he witnessed

his father buy brake products, except "more than once," perhaps "two or three times."

Febi Mettias did the family's laundry, including washing the clothing that Philip wore while doing the brake work on the family vehicles. In video testimony played at trial, Febi testified that she washed the laundry "[e]very other day" and had "a habit to shake the clothes" putting them in the washing machine. After shaking the clothes out, she could see dust in the air and feel the dust on her hands. She also cleaned the laundry area after the laundry was complete, using a towel and a broom, which also created dust.

Plaintiffs' counsel posed a hypothetical question to their medical expert, Dr. Barry Horn, premised on the following assumed facts: (1) plaintiffs' family Lebaron had two rear wheel brake drums, containing a total of four brake shoes of an asbestos-containing design, (2) Philip repaired the brake shoes twice a year, beginning in summer 1987 and ending in December 1989, resulting in a total of 24 brake shoe replacements, and (3) during the repair work he sanded the shoes using sandpaper creating dust. Based on these assumptions, Dr. Horn opined that the brake repairs Philip performed were a substantial factor in causing his mesothelioma, because in doing the repairs he was exposed to free asbestos fibers created by the sanding. Assuming that Febi laundered the clothing Philip wore (shaking them before putting them in the washer) and the rags he used during that work, Dr. Horn also opined that Febi was exposed to asbestos fibers, which was a substantial factor in causing her mesothelioma.

6

*Verdict*

The jury returned a special verdict in favor of Honeywell and Pep Boys. On plaintiff's strict liability (failure to warn) claim, the jury found that "the defendants' asbestos-containing products ha[d] potential risks that were known or knowable in light of the scientific and medical knowledge that was generally accepted in the scientific community on or after 1987." But the jury found that "the potential risks of defendants' asbestos-containing products [did not pose] a substantial danger to persons using or misusing defendants' products in an intended or reasonably foreseeable way." On plaintiffs' design defect claim, the jury answered "No," to the question whether "defendants' asbestos-containing products fail[ed] to perform as safely as an ordinary consumer would expect when used or misused in an intended or reasonably foreseeable way." Finally, on plaintiff's negligence claim, they answered "No" to the question whether the defendants were negligent.

## DISCUSSION

*CACI Nos. 4.00 and 4.01*

Plaintiffs contend that the trial court erred in denying their request to instruct the jury pursuant to CACI Nos. 400 and 401. According to plaintiffs, at trial they pursued two theories of negligence against Pep Boys. The first was liability premised on Pep Boys' negligence as a supplier of Bendix asbestos-containing brake pads and shoes used by Philip in home break repairs. That theory was covered by CACI Nos. 1220 (Negligence–Essential Factual Elements), 1221

7

(Negligence–Basic Standard of Care), and 1222 (Negligence–Manufacturer or Supplier–Duty to Warn). The trial court granted their request to give those instructions.[4] Their second theory, they maintain,

_____

[4] The parties have not provided us with copies of the written instructions given by the court. We rely on the record of the court's oral instructions. Pursuant to CACI No. 12.20, the court instructed: "Plaintiffs claim that Philip Mettias and Febi Mettias were harmed by Defendants' negligence and that they should be held responsible for that harm. To establish this claim, the plaintiffs must prove all of the following:
"1.    That the defendants manufactured or sold the products;
"2.    That the defendants were negligent in manufacturing or selling the products;
"3.    That Philip Mettias and Febi Mettias were harmed; and
"4.    That the defendants' negligence was a substantial factor in causing Philip Mettias' and Febi Mettias' harm and the plaintiffs'. [*sic*]"
Pursuant to CACI No. 12.21, the court instructed: "A manufacturer or seller is negligent if it fails to use the amount of care in manufacturing or selling the products that a reasonably careful manufacturer or seller would use in similar circumstances to avoid exposing others to a foreseeable risk of harm. [¶] In determining whether the defendants used reasonable care, you should balance what [the defendants] knew or should have known about the likelihood and severity of potential harm from the product against the burden of taking safety measures to reduce or avoid the harm."
Pursuant to CACI No. 1222, the court instructed: "Plaintiffs claim that the defendants were negligent by not using reasonable care to warn about the product's dangerous condition or about facts that made the product likely to be dangerous. To establish this claim, the plaintiffs must have proved all of the following: [¶] 1. That defendants manufactured or sold the product; [¶] 2. That the defendants knew or reasonably should have known that the product was dangerous or was likely to be dangerous when used or misused in a reasonably foreseeable manner; [¶] 3. That defendants knew or reasonably should have known that users would not realize the danger; [¶] 4. That the defendants failed to adequately warn of the danger; [¶] 5. That a reasonable manufacturer or seller under the same or similar circumstances would have warned of the danger; [¶] 6. That Philip and Febi Mettias were harmed; and [¶] 7. That defendants' failure to warn was a substantial factor in causing Philip Mettias' and Febi Mettias' harm."

8

was a general negligence theory based on a duty of care other than as a supplier of Bendix brakes, for which they requested, but were denied, the pattern instructions for general negligence, CACI Nos. 400 and 401.[5]

Plaintiffs contend that they were entitled to CACI Nos. 400 and 401. They are mistaken. It is of course true that "a litigant is entitled to instructions on every theory advanced by him which finds support in the evidence." (*Hasson v. Ford Motor Co.* (1977) 19 Cal.3d 530, 543-544, overruled on different grounds in *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574.) But here, the only viable theory of negligence was that Pep Boys violated its duty of due care as a supplier of Bendix brakes. As to Philip, the evidence tended to show that from 1987 through 1989, Philip performed brake repairs on the family's Chrysler Lebaron using replacement asbestos-containing Bendix brakes purchased at Pep Boys. In doing the repairs, he was exposed to free asbestos fibers created by sanding the brake pads, and that exposure

---

[5]     CACI No. 400 states the elements of negligence: "[Name of plaintiff] claims that [he/she] was harmed by [name of defendant]'s negligence. To establish this claim, [name of plaintiff] must prove all of the following: [¶] 1. That [name of defendant] was negligent; [¶] 2. That [name of plaintiff] was harmed; and [¶] 3. That [name of defendant]'s negligence was a substantial factor in causing [name of plaintiff]'s harm."

CACI No. 401 states the basic standard of care: "Negligence is the failure to use reasonable care to prevent harm to oneself or to others. [¶] A person can be negligent by acting or by failing to act. A person is negligent if he or she does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation. [¶] You must decide how a reasonably careful person would have acted in [name of plaintiff/defendant]'s situation."

was a substantial factor in causing his mesothelioma. Likewise, as to Febi, the evidence of Pep Boys' alleged negligence was tied to Philip's brake repairs (and Pep Boys' duty as a supplier of the Bendix brakes Philip used), namely, that her laundering the clothes and rags Philip used in doing the repairs exposed her to asbestos fibers, and that exposure was a substantial factor in causing her mesothelioma.

This evidence, supporting instructions based on Pep Boys' duty of care as a supplier of asbestos-containing Bendix brakes, was the precise theory covered by CACI Nos. 1220, 1221, and 1222. "A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence. The trial court may not force the litigant to rely on abstract generalities, but must instruct *in specific terms that relate the party's theory to the particular case.*" (*Soule v. General Motors Corp., supra*, 8 Cal.4th at p. 572, italics added.) That is what the trial court did here–instruct in specific terms relating to the theory of negligence support by the evidence.

In their opening brief, plaintiffs fail to explain precisely why, on the evidence presented, they were entitled not only to CACI Nos. 1220, 1221, and 1222, but also to CACI Nos. 400 and 401. Plaintiffs simply review some of the evidence they presented in general fashion, and assert in conclusory terms that "[w]hile some of this evidence may have equally supported the Mettias family's product liability theory of recovery against Pep Boys, it also supported a theory of recovery based on general negligence." But they do not articulate a cognizable theory

10

based on the evidence under which Pep Boys owed a duty of care to them that was not encompassed by CACI Nos. 1220, 1221, and 1222.

Not until their reply brief do they attempt to articulate the specific evidence which they contend mandated the giving of CACI Nos. 400 and 401. They assert that they produced evidence tending to show not simply that Pep Boys was negligent in permitting Philip and Febi to be exposed to asbestos without adequate warnings and precautions based on Philip's purchase and installation of Bendix brakes. They contend that they produced evidence that Philip was exposed to asbestos when he was physically present in the Victorville Pep Boys store. But the evidence they point to is clearly insufficient to justify general negligence instructions.

They cite evidence that the Victorville store had service repair facilities where employees performed brake repairs. However, there was no evidence at trial that Philip was exposed to asbestos fibers migrating into the retail area from any repairs in the service bays. Moreover, we note that plaintiffs fail to mention Jimmy's testimony that when he went with Philip to the Pep Boys store, they would pick up parts and leave, a process of perhaps ten to fifteen minutes in the store. They did not stay there longer.

Next, plaintiffs rely on testimony by Lilia Magana and Dr. William Longo regarding the return of used brake cores. Magana, who worked at the Pep Boys store on Washington Boulevard in Los Angeles, not the Victorville store, testified that customers would return used products to the Los Angeles store, including brake cores, for a cash refund. All such products were returned in the box. In her store, the

11

box would be handed to the cashier, who would put it in an open bin behind the customer service counter where they were kept. Customers were not allowed anywhere near the bin. Dr. Longo testified that used cores have the potential of releasing significant amounts of asbestos "especially if they are manhandled in some manner." He was asked whether he had an opinion whether used cores contained in boxes brought back to the store had "the potential of releasing significant amounts of asbestos" if "dumped in a box without a lid." He replied: "[t]he second part, yes. It's unclear how much . . . release you are having in the box while you are carrying them, but if they're dumped into a container with other shoes, yes."

This evidence does not support a general negligence theory based on asbestos exposure while Philip was present in the store. There was no evidence that the Victorville Pep Boys had an open bin for storing boxes containing used cores behind the counter as did the Los Angeles store in which Magana worked. Moreover, even if it can be assumed that the Victorville store handled returned cores in the same way as the Los Angeles store, Magana testified that the bin was not located in an area where customers would be anywhere near it. Moreover, she did not testify that the boxes were simply "dumped" in the bin (an essential fact to Dr. Long's opinion). She testified that the cashier would "put them in a bin." Further, even if the returned boxes of cores at the Victorville store were simply "dumped," Dr. Longo's opinion that there was a potential to release significant amounts of asbestos was not evidence that such a release ever occurred, or that Philip was ever exposed to such a release during his brief stays in the store. Finally,

12

there was no evidence that even if Philip was exposed to asbestos fibers while in the Victorville store, such exposure was a substantial factor in causing his and Febi's mesothelioma.

In short, there was no evidence to support a theory of negligence against Pep Boys other than its alleged violation of its duty of care as a supplier of asbestos-containing brakes.

Assuming for the sake of argument that the trial court should have instructed pursuant to CACI Nos. 400 and 401, it is not reasonably probable that a different result would have been reached. (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800 (*Cassim*).) Plaintiffs' evidence against Pep Boys, even on the theory that it was a supplier of asbestos containing brakes, was exceedingly weak. Plaintiffs make no attempt to demonstrate how, on the entire record, including the significant defense evidence (which they do not even mention in the context of potential prejudice; see fn. 2 , *ante*) the result would have been any different if CACI Nos. 400 and 401 had been given. The actual findings made by the jury bely any notion of prejudice. On plaintiff's strict liability claims, the jury found: (1) that "the potential risks of defendants' asbestos-containing products [did not pose] a substantial danger to persons using or misusing defendants' products in an intended or reasonably foreseeable way"; and (2) that "defendants' asbestos-containing products [did not] fail to perform as safely as an ordinary consumer would expect when used or misused in an intended or reasonably foreseeable way." And the jury also made a general finding that Pep Boys was not negligent. On the instructions given, that finding meant that the jury concluded Pep Boys did not

13

breach a duty of care in supplying Bendix brake products (CACI Nos. 1220, 1221) and that Pep Boys did not breach a duty of care by any failure to warn (CACI No. 1222). Given these findings and the evidence presented, we are at a loss to see how instructing on a general negligence theory might have changed he result. Any error in failing to instruct using CACI Nos. 400 and 401 was harmless.

*Misstatements in Oral Instructions*

Plaintiffs contend that the court's oral reading of certain instructions was erroneous and prejudicial. The contention is meritless.

On plaintiffs' strict product liability claims, the trial court instructed pursuant to modified versions of CACI No. 1203 (design defect-consumer expectation test) and CACI No. 1205 (failure to warn). As to the element of causation in the first reading of CACI No. 1203, the court stated that plaintiffs had to prove that the product's failure to perform as expected "was a substantial factor in causing Philip Mettias' and Febi Mettias' harm *as well as the plaintiffs' harm.*" (Italics added.) In reading CACI No. 1205, the court stated that plaintiffs had to prove that the lack of sufficient warning "was a substantial factor in causing Philip Mettias' and Febi Mettias' *and the plaintiffs' harm.*" (Italics added.) As the trial court was about to make the same statement about proof of plaintiffs' harm in the reading of CACI No. 1220 regarding the negligence claim, plaintiffs' counsel asked for a sidebar, at which he pointed out that the language requiring proof of plaintiffs' harm was incorrect, as this was a wrongful death action.

14

The court agreed to reread the instructions, and delete the reference to proof of plaintiffs' harm. In reinstructing on CACI No. 1203, the court informed the jury in relevant part that plaintiffs had to prove "that the product's failure to perform safely was a substantial factor in causing Philip Mettias' and Febi Mettias' harm. The instruction should stop there. I'm eliminating from what I had read to you before the words 'as well as the plaintiffs' harm.' You are not to consider that." In rereading CACI No. 1205, the court told the jury in relevant part that plaintiffs had to prove "that the lack of sufficient warnings was a substantial factor in causing Philip Mettias' and Febi Mettias' harm. And I am eliminating the words that I have read to you before 'and the plaintiffs' harm.' You are only to accept the instruction as I have changed it *and in its original form.*" (Italics added.) In rereading CACI No. 1220, the court instructed that plaintiffs had to prove "that defendants' negligence was a substantial factor in causing Philip Mettias' and Febi Mettias' harm. And that is the complete instruction that you are to follow in reaching a verdict in this case." The court then read CACI No. 1222, and did not include any reference to plaintiffs' having to prove that they were harmed.

As best we understand plaintiffs' contention, it is that although the court corrected the reference to proof of plaintiffs' harm in CACI No. 1203 and 1220, and never mentioned the point in CACI No. 1222, the court did not make an adequate correction in the CACI No. 1205, because as to that instruction the court stated, "You are only to accept the instruction [CACI No. 1205] as I have changed it *and in its original form.*" (Italics added.) According to plaintiffs, this reference to

15

accepting CACI No. 1205 as changed and in its original form might have confused the jury into erroneously believing that to prove *all* of plaintiffs' claims, plaintiffs had to prove that *they* were exposed to asbestos as well as Philip and Febi.

The contention is, to say the least, farfetched, and it ignores virtually the entire record except for four words ("and in its original form") spoken by the court in its rereading of CACI No. 1205. Regardless, we need not dwell on the issue. As we have already noted, the special verdict returned by the jury shows that the jury rejected each cause of action on an essential premise of Pep Boys' alleged liability unrelated to the issue of causation of harm. Thus, even were we to assume that the jury was somehow confused as to whether plaintiffs had to prove that plaintiffs themselves were exposed to asbestos, we would conclude that the error was not prejudicial. (*Cassim, supra,* 33 Cal.4th at p. 800.)

## DISPOSITION

The judgment is affirmed.  Pep Boys shall recover its costs on appeal.


WILLHITE, J.


We concur:


MANELLA, P. J.


COLLINS, J.

17

Filed 6/5/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LAOSD ASBESTOS CASES | B287831 |
| | JCCP No. 4674 |
| JIMMY METTIAS et al., | |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC538462) |
| v. | |
| THE PEP BOYS MANNY MOE & JACK OF CALIFORNIA et al. | ORDER GRANTING PUBLICATION |
| Defendants and Respondents. | |

THE COURT:*

The opinion in the above-entitled matter filed on May 14, 2019, was not certified for publication in the Official Reports. Good cause appearing, it is ordered that the opinion in the above entitled matter be published in the official reports.

_____
*MANELLA, P. J.         WILLHITE, J.         COLLINS, J.