Filed 1/19/21  Garcia v. Gray CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MIGUEL GARCIA et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>TOMMIE JEROME GRAY et al.,<br><br>Defendants and Respondents. | B300661<br><br>(Los Angeles County Super. Ct. No. BC618627) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael I. Levanas, Judge.  Affirmed.

Berglund & Johnson and Anthony E. Vieira for Plaintiffs and Appellants Miguel Garcia and Reina Garcia.

Booth, Hillary Arrow Booth and Ian P. Culver for Defendants and Respondents Tommie Jerome Gray and Eddies Trucking & Messenger Service LLC.

———————————————

Twenty-one-year-old Arnold Garcia died after pitching over his bicycle's handlebars and skidding under the rear wheels of a semi-tractor-trailer traveling next to him on Crenshaw Boulevard in the City of Hawthorne.  Garcia's parents, Miguel and Reina Garcia, filed a wrongful death and survival action against the truck driver, Tommie Jerome Gray, and his employer, Edward Barsoum, doing business as Eddie's Trucking & Messenger Service.  After a two-week trial the jury returned a special verdict finding neither Gray nor Barsoum had been negligent.

On appeal from the judgment entered in favor of Gray and Barsoum, the Garcia parents argue the trial court committed reversible error by permitting Hawthorne Police Officer Wilbert Pereira, who arrived at the scene several minutes after the collision, to testify the accident had been caused by Garcia's abrupt left turn into traffic.  They also contend the court committed prejudicial error by refusing to include in its instructions Vehicle Code section 21202, which provides a bicycle must be ridden as close "as practicable to the right-hand curb or edge of the roadway" except in certain specified situations.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Garcia Parents' Case-in-chief*

The Garcia parents' theory of the case was that Gray, while passing Garcia as they both travelled southbound in the far-right, number 3 lane on Crenshaw Boulevard, negligently failed to move his semi-tractor-trailer entirely into the adjacent number 2 lane, instead straddling the number 2 and 3 lanes.  The proximity and noise of Gray's large vehicle startled Garcia, who

2

reacted by turning to his left and braking, causing him to pitch over the handlebars of his bicycle and fall directly into the path of the semi-trailer's rear wheels.

In addition to their own testimony and that of Garcia's older sister and one of his friends, the Garcia parents presented six witnesses during their case-in-chief: Anthony Lyscio, who had witnessed the accident while riding in a shuttle bus that was immediately behind Gray's truck; Gray and Barsoum pursuant to Evidence Code section 776; David King, an accident reconstruction expert; Douglas Shapiro, a bicycle safety expert; and Paul Herbert, a trucking safety expert. The jury also saw a surveillance video from a nearby business on Crenshaw Boulevard that is adjacent to the accident site. (The video was not continuous; separate frames were recorded at one-second intervals.)

The evidence established Garcia was on his way to school on May 4, 2015 when he was struck by Gray's semi-tractor-trailer. Garcia's backpack, a spilled juice cup and drink and a set of earphones were found near Garcia's body following the accident. Garcia was taken by ambulance to an emergency room but died shortly thereafter.

Lyscio testified he saw Garcia riding his bicycle on the sidewalk and then come down into the street, at which point he was about 50 to 100 feet in front of the semi-tractor-trailer. According to Lyscio, "It looked like riding off the curb there was a little bit of a stumble, but then [the bicyclist] regained stability for a short bit." Garcia continued riding at the transition between the gutter (which Lyscio estimated to be 18-inches wide) and the street itself. The truck, which had been driving in the far-right lane (lane 3), as was Lyscio's shuttle bus, moved to its

3

left, about halfway into lane 2.  Lyscio believed there was a clearance of three to six feet between the truck and the bicycle as the truck started to pass.  Asked what happened next, Lyscio testified, "I see the bicyclist looks like—like almost like trips over the bicycle.  Kind of—effectively goes up and over, like, the handlebars, and then kind of pitches, like, under the—just as the big rig tractor is passing—passing him, he kind of tripped up over the handlebars, and then he falls underneath the path of the rear wheels, and then as the truck proceeds forward, the rear wheels run over him."

Examined as an adverse witness, Gray testified that he saw Garcia on the sidewalk ahead of him, attempting to avoid pedestrians who were also on the sidewalk, but did not see him turn into the roadway.  At his deposition Gray had testified, after his tractor had passed Garcia, he looked in the rear-view mirror and saw Garcia still riding on the sidewalk.  At trial, however, Gray explained, because of the height of the tractor cab, he could only see Garcia's head, not the wheels of the bicycle, and just assumed he was still on the sidewalk.  If he had seen Garcia in the street, Gray testified, he would have moved his vehicle all the way into lane 2, rather than straddling lanes 2 and 3, as he passed.  Gray also acknowledged he would have tapped his horn before passing if he had realized Garcia was then in the street.

Herbert, plaintiffs' trucking safety expert, opined that Gray "clearly was inattentive" in failing to see Garcia had moved from the sidewalk into the roadway.  Herbert also testified that "truck drivers are regularly taught about the startling element of the large loud vehicle that they are operating, especially when operating close to a bicyclist and in the same direction."  That is why, he explained, it is important to sound a warning horn from

far enough away, to "help[ ] eliminate or greatly reduce this startle factor that we've been talking about."

Shapiro, plaintiffs' bicycle safety expert, testified bicyclists depend on motorists approaching from behind either to flash their vehicles' lights or to lightly sound the horn before passing to ensure the cyclist is aware of the car or truck's presence. "It's my expectation that the passing vehicle is going to provide some level of caution. Because, look, I'm on a bike." Shapiro also explained that a common reaction among all bicyclists is to be startled when a large truck approaches them from behind; and "the bigger the truck, the louder the truck, the louder the 'Oh, my gosh,' is going to be in my head." What happens when a bicyclist is startled, he continued, "depends on the experience of the rider, the conditions of the road surface. Some things that happen are, some riders will try to get a better look at what's approaching and look to their left, and in doing so, more often than not, cyclists will tend to steer in the direction that they're looking."[1] In Shapiro's opinion, "This accident was caused because Mr. Garcia, his ability to operate his bicycle in a safe and reasonable way on Crenshaw was compromised by an oversized truck in the No. 3 lane and that changed the course of his ability to operate his bicycle in a controlled way. . . . His lateral safety cushion was taken away by Mr. Gray's vehicle."

Based on the surveillance video, Shapiro confirmed Garcia was holding onto the handlebars with his left hand and holding a cup (the juice drink) in his right hand. Shapiro could not tell whether Garcia was simultaneously holding the cup and

---

[1] Shapiro added, "Some bicyclists will do the opposite. They will try to use their peripheral vision to see what's happening, and I've witnessed some riders steer to the right."

handlebars with his right hand. Shapiro acknowledged, to best avoid an impact and collision, the cyclist should mostly use his or her rear brakes. Examining the bicycle before the jury, Shapiro explained the right-hand lever was for the rear brakes; the left-hand lever for the front brakes. Asked on cross-examination what would happen if a cyclist was riding 15 or 16 miles per hour and suddenly squeezed the left-hand brake, Shapiro answered, "Bicyclist would typically do what's called an endo. They would go over the handlebars." Shapiro also confirmed there was water in the gutter where Garcia was riding, which is "something that would be of concern in terms of operating your bicycle in an upright, stable, directionally correct manner."

King, the Garcia parents' accident reconstructionist, testified there is a 22-inch-wide, continuously poured gutter on the southbound side of Crenshaw Boulevard. Lane 3 is an additional 10 feet, two inches wide (that is, lane 3 with the gutter is 12-feet wide). Lanes 1 and 2 are also approximately 10-feet wide. Although there is a seam between the gutter and lane 3, King explained, "[N]othing stood out as there being any lip or anything like that, that I can recall."

Based on his examination of the video, King observed that Garcia was holding a cup in this right hand and calculated he was traveling between 15 and 16 miles per hour; Gray's truck's speed was between 24 and 26 miles per hour. Just prior to the truck beginning to pass him (when it was five feet behind the bicycle), Garcia was riding in the center of the gutter, and Gray's vehicle was in the middle of lane 3. At that point the step on the side of the tractor was approximately 52 inches, slightly more than four feet, from Garcia. The truck then moved toward lane 2, "angling away from the curb," while Garcia appeared to ride

toward the curb as the truck began to pass. The bicycle then seemed to angle to the left.

Based on his analysis, King did not believe Gray's deposition testimony that he still saw Garcia on the sidewalk in his rear-view mirror after the tractor had passed him. On cross-examination King agreed the time-lapsed photographs of the incident indicated that water had been splashed up from the gutter by Garcia's bicycle.

2. *The Motion in Limine Regarding Officer Pereira*

Prior to trial the Garcia parents moved in limine to exclude the testimony of the police officers who had prepared the traffic collision report following their investigation of the accident "as to who they think was at fault in the accident, including but not limited to any opinion as to the cause of the accident in this case or violation of any law." They argued a police officer's opinion regarding the cause of an automobile accident is inadmissible when the officer did not observe the accident and could constitute an impermissible legal opinion.

Following the deposition of Officer Pereira, who had been designated by Gray and Barsoum as a nonretained expert, the Garcia parents submitted a supplemental motion in limine in which they acknowledged Officer Pereira could provide pertinent (and admissible) percipient testimony regarding his first-hand observations from the accident scene, but reiterated their motion to exclude his testimony as to whom he considered to be at fault, including his opinions regarding the cause of the accident and any violations of the law.[2] They also argued Officer Pereira's

---

[2] Emphasizing Officer Pereira's lack of training in accident reconstruction, the Garcia parents argued his opinions lacked foundation, but neither the original nor supplemental motion

7

proposed testimony would be cumulative, duplicating that of defense accident reconstruction expert Jon Landerville. In support of the supplemental motion, the Garcia parents submitted their counsel's declaration summarizing and providing excerpts from Officer Pereira's deposition testimony, emphasizing that he had admitted he had no accident reconstruction training and his report was an accident investigation report, not an accident reconstruction.

Following argument the court denied the motion, ruling, "I'm going to allow the police officer to testify, and I'm going to give an instruction to the jury that all experts, including police officers, opining on an expert opinion are subject to the jury's decision as to how you accept it, what the basis for it was, and all expert testimony is subject—you can give me an instruction, but it's going to be clear that just because a police officer formed an opinion does not give it any more weight or credibility than any other experts in the case. That's how I'm going to handle it."

3. *The Defense Case*

The defense theory of the accident, based on the testimony of their accident reconstruction expert, Landerville, was that Garcia was effectively riding one-handed, holding a juice cup in his right hand, perhaps while wearing earphones,[3] when he lost

_____

in limine asserted Officer Pereira's testimony should be excluded because he was not qualified to provide expert testimony. And notwithstanding the Garcia parents' subsequent complaint about Officer Pereira's testifying while in uniform, their counsel never asked the court to direct the officer to appear in civilian clothes.

[3] It is lawful to operate a bicycle while wearing one earbud, not two. Although it was implied, none of the witnesses testified

control of his bicycle as he hit water in the gutter portion of the street. He abruptly turned left, toward traffic, and then jammed on his front brakes (using his left hand), which caused him to pitch over the handlebars and under the wheels of Gray's tractor trailer.

Officer Pereira, the first defense witness, explained he was assigned to the traffic bureau of the Hawthorne Police Department as a motorcycle officer at the time of the accident in May 2015. He was one of the first officers at the scene and was the lead investigator. In conducting his investigation he took measurements at the accident scene using laser equipment and reviewed the surveillance video. Based on that investigation, Gray was not cited or given any warning in connection with the accident; it was Officer Pereira's opinion that Gray had operated his truck in compliance with Vehicle Code section 21760, the Three Feet for Safety Act, which requires the driver of a motor vehicle, when passing a bicycle traveling in the same direction, to maintain a distance of at least three feet between any part of the vehicle and any part of a bicycle or its operator.[4] He also

_____

Garcia had been wearing both earbuds found at the scene of the accident.

[4]      Vehicle Code section 21760 provides in part, "(c) A driver of a motor vehicle shall not overtake or pass a bicycle proceeding in the same direction on a highway at a distance of less than three feet between any part of the motor vehicle and any part of the bicycle or its operator. [¶] (d) If the driver of a motor vehicle is unable to comply with subdivision (c), due to traffic or roadway conditions, the driver shall slow to a speed that is reasonable and prudent, and may pass only when doing so would not endanger the safety of the operator of the bicycle, taking into account the

concluded that Garcia appeared to have made an unsafe turn into traffic. The following brief exchange then took place between defense counsel and Officer Pereira:

"Q. Is it accurate to say that you concluded after your entire investigation that Mr. Garcia was the cause of this accident?

"A. Yes.

"Q. And you did not come to any—is it true that you did not come to a conclusion as to why Mr. Garcia turned into traffic?

"A. I did not."

On cross-examination Officer Pereira agreed he had no training as an accident reconstructionist or specifically in interpreting Vehicle Code section 21760, confirmed the unsafe turn he had referred to was Garcia's sharp directional turn to the left, and repeated he was not aware why Garcia had turned into traffic.

Landerville testified Garcia was travelling at a speed of approximately 17 miles per hour and Gray's truck at 25 miles per hour prior to the accident. Explaining his opinion the accident occurred when Garcia lost control of his bicycle as he hit water in the gutter and braked suddenly, Landerville pointed to the surveillance video, which showed the sidewalk was dry right before Garcia made his sharp turn to the left and wet right afterward, indicating a large splash from the bicycle's wheels during the one-second interval between video frames. Immediately after that water splash, the tractor portion of Gray's vehicle and the bicycle were parallel to each other with a gap between them of 4.4 feet.

---

size and speed of the motor vehicle and bicycle, traffic conditions, weather, visibility, and surface and width of the highway."

The defense trucking safety expert testified an eight-mile-per-hour differential in passing a bicycle was reasonable and opined Gray had handled the situation properly by moving gradually to the left, straddling lanes 2 and 3, and giving approximately 4.4 feet of space to the bicycle.

4. *Jury Instructions*

The court instructed, as pertinent to the issues on appeal, with CACI No. 219, which provides, "You do not have to accept an expert's opinion. As with any other witness, it is up to you to decide whether you believe the expert's testimony and choose to use it as a basis for your decision." CACI No. 219 specifically identifies the expert's training and experience as factors for the jury to consider in evaluating the testimony. The court also instructed with CACI Nos. 220 and 221 regarding expert testimony. The Garcia parents did not accept the court's invitation to propose a special instruction that Officer Pereira's testimony was not to be given any additional weight because he was a police officer.

The court also instructed with several iterations of CACI No. 418, Presumption of Negligence Per Se, as applied to Vehicle Code sections 21205, prohibiting a person operating a bicycle from carrying any article that prevents the operator from keeping at least one hand on the handlebars; 21760, the Three Feet for Safety Act; 22107, prohibiting a vehicle from turning left or right on the roadway until the movement can be made with reasonable safety; and 27400, prohibiting a person operating a motor vehicle or bicycle from wearing earphones covering or inserted in both ears. CACI No. 418 states a person who violates the law must be found negligent if the violation was a substantial factor in causing harm unless the violation was excused. CACI No. 420,

11

which the court also gave, instructed that a violation of the law is excused if the violation was reasonable; or, despite using reasonable care, Garcia or Gray was not able to obey the law; or either party faced an emergency that was not caused by his own misconduct; or obeying the law would have involved a greater risk of harm to others.

The court declined the Garcia parents' general request to instruct the jury concerning Vehicle Code section 21202, which provides in part, "Any person operating a bicycle upon a roadway at a speed less than the normal speed of traffic moving in the same direction at that time shall ride as close as practicable to the right-hand curb or edge of the roadway except . . . [¶] . . . [¶] [w]hen reasonably necessary to avoid conditions (including, but not limited to, fixed or moving objects, vehicles, bicycles, pedestrians, animals, surface hazards, or substandard width lanes) that make it unsafe to continue along the right-hand curb or edge . . . . For purposes of this section, a 'substandard width lane' is a lane that is too narrow for a bicycle and a vehicle to travel safely side by side within the lane." The Garcia parents did not propose any language for such an instruction.[5]

After determining section 21202 was not relevant to the facts of the case, the court offered to instruct the jury the statute

---

[5] Counsel for Gray and Barsoum had initially requested a CACI No. 418 instruction for section 21202, but subsequently withdrew that request once they decided not to argue Garcia had violated the statute. That proposed instruction is not in the record on appeal.

did not apply.[6]  The Garcia parents did not ask the court to give such an instruction.

     5.  *The Special Verdict, Judgment and New Trial Motion*

The jury found neither Gray (by a vote of 11 to one) nor Barsoum (unanimously) had been negligent.  As instructed, based on the answer to those two questions, the jury did not answer whether either defendant's negligence had been a substantial factor in causing harm to Garcia or whether Garcia had been negligent.

Judgment was entered on July 8, 2019, and notice of entry of judgment was served by the clerk the same day.  The Garcia parents moved for a new trial on July 22, 2019, asserting the trial court had erred in admitting expert testimony from Officer Pereira concerning his conclusions of law, abused its discretion in permitting that testimony without adequate foundation and committed error in declining to instruct regarding Vehicle Code section 21202.  After two hearings the court filed a written ruling on October 10, 2019 denying the motion, finding there had been no irregularity or error in law that was so prejudicial as to have prevented the Garcia parents from having a fair trial.[7]

---

[6]    Officer Pereira considered whether Garcia had violated Vehicle Code section 21202 during his investigation.  Gray and Barsoum did not contend at trial that Garcia had violated the statute or that he had not been riding as close as practicable to the right-hand curb.

[7]    Hearing on the new trial motion began as originally scheduled on September 6, 2019, but was continued by the court to September 13, 2019.  Although the court purported to deny the motion in its ruling on October 10, 2019, pursuant to Code of Civil Procedure 660, subdivision (c), its jurisdiction to rule expired on September 19, 2019, at which time the motion was

13

The Garcia parents filed a timely notice of appeal on September 6, 2019.

## DISCUSSION

1. *Allowing Officer Pereira To Testify Did Not Constitute Reversible Error*

   a. *Standard of review*

We review a trial court's ruling admitting or excluding expert testimony for abuse of discretion. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.) "[E]videntiary objections based on lack of foundation, qualification of experts, and conclusory and speculative testimony are traditionally left to the sound discretion of the trial court." (*Alexander v. Scripps Memorial Hospital La Jolla* (2018) 23 Cal.App.5th 206, 226.) "A court abuses its discretion if its ruling is "'so irrational or arbitrary that no reasonable person could agree with it.'" . . . 'It is the appellant's burden on appeal to show the trial court abused its discretion.'" (*Sanchez v. Kern Emergency Medical Transportation Corp.* (2017) 8 Cal.App.5th 146, 154.)

A judgment may be reversed for the erroneous admission of evidence only if the error "resulted in a miscarriage of justice." (Evid. Code, § 353, subd. (b).) "Claims of evidentiary error under California law are reviewed for prejudice applying the 'miscarriage of justice' or 'reasonably probable' harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818, 836 that is embodied in article VI, section 13 of the California Constitution. Under the *Watson* harmless error standard, it is the burden of

denied by operation of law. The Garcia parents have not appealed denial of their motion for new trial.

14

appellants to show that it is reasonably probable that they would have received a more favorable result at trial had the error not occurred." (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 447; see *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800 [error justifies reversal in a civil action only if it is reasonably probable a different result would have been reached absent the error].)

> b. *The trial court did not abuse its discretion in permitting Officer Pereira to testify as an expert witness*

A police officer trained and experienced in the investigation of traffic accidents may give expert testimony as the facts and circumstances of an accident based upon his or her inspection of the scene and first-hand analysis of other relevant information. (*Hart v. Wielt* (1970) 4 Cal.App.3d 224, 229 ["[i]t is generally established that traffic officers whose duties include investigations of automobile accidents are qualified experts and may properly testify concerning their opinions as to the various factors involved in such accidents, based upon their own observations"]; see *Kastner v. Los Angeles Metropolitan Transportation Authority* (1965) 63 Cal.2d 52, 57-58; *Francis v. Sauve* (1963) 222 Cal.App.2d 102, 114.) Here, Officer Pereira not only personally inspected the accident scene immediately after the incident but also reviewed the surveillance video before completing his investigation report.

The Garcia parents did establish during Officer Pereira's deposition, submitted in support of their motion in limine, and then again when questioning him on cross-examination, that Office Pereira lacked training that would qualify him to testify as an accident reconstruction or trucking safety expert. But those gaps in training and expertise, which the jury was instructed it

15

could evaluate, went to the weight to be given his opinions, not the threshold question of his qualifications to testify to the results of his accident investigation, an area in which he was trained and experienced. (Cf. *People v. Prince* (2007) 40 Cal.4th 1179, 1229 ["[i]t was for defendant to expose the weaknesses in the expert's opinion on cross-examination—and defendant did so"].)

    *Crooks v. Pirrone* (1964) 228 Cal.App.2d 549, which the Garcia parents cite, fully supports this conclusion. In *Crooks* the trial court, after evaluating a traffic officer's qualifications, excluded his testimony concerning the approximate speed of vehicles involved in an accident he had not witnessed. In affirming the trial court's exercise of discretion, the court of appeal did not, as the Garcia parents suggest, require training in accident reconstruction or establish other minimum requirements for a traffic officer's expert opinion, but rather emphasized, "[T]he responsibility for determining the competency and qualifications of an expert witness rests initially with the trial court." (*Id.* at p. 553.) That ruling, the court continued, will only be upset for an abuse of discretion. (*Ibid.*) Here, the trial court fully considered the Garcia parents' challenge to Officer Pereira's qualifications (phrased as lack of foundation) when ruling on their motion in limine to exclude his expert opinion. The court's decision to deny that motion was neither arbitrary nor irrational and cannot be disturbed on this record. (See *Sargon Enterprises, Inc. v. University of Southern California*, *supra*, 55 Cal.4th at p. 773 ["[a] ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it'"]; *People v. Carmony* (2004) 33 Cal.4th 367, 377 ["[a] trial court does not abuse its

discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it"].)

  c. *Even if portions of the testimony should have been excluded, any error was harmless*

  Although they question Officer Pereira's qualifications on appeal, as they did in the trial court, the Garcia parents' primary argument is that the court impermissibly permitted Officer Pereira to testify to legal conclusions and to usurp the jury's factfinding function, specifically as to whether Gray had violated Vehicle Code section 21760, whether Garcia had violated the Vehicle Code by making an unsafe left turn,[8] and whether Garcia's abrupt left turn had caused the accident.

  The Garcia parents' argument, based on language from *Summers v. A. L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1178 (*Summers*), fails to give adequate weight to Evidence Code section 805, which provides, "Testimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact." (See, e.g., *North American Capacity Ins. Co. v. Claremont Liability Ins. Co.* (2009) 177 Cal.App.4th 272, 294 ["[t]hat the [expert] opinion expressed may have included ultimate facts to be decided by the court does not alone make such evidence improper"]; cf. *People v. Vang* (2011) 52 Cal.4th 1038, 1048 ["'A witness may not express an opinion on a defendant's guilt. [Citations.]  The reason for this rule is not because guilt is the ultimate issue of fact for the jury, as opinion testimony often goes to the ultimate issue.  [Citations.]  "Rather, opinions on guilt or

---

[8]  Officer Pereira specifically identified Vehicle Code section 22107 as the statute he believed Garcia had violated only on cross-examination.

17

innocence are inadmissible because they are of no assistance to the trier of fact.  To put it another way, the trier of fact is as competent as the witness to weigh the evidence and draw a conclusion on the issue of guilt'"'"].)

Under Evidence Code section 805 Officer Pereira's opinion, based on his investigation and his training and experience as a traffic officer, that Garcia's abrupt turn to the left was unsafe and the precipitating cause for the accident constituted proper expert testimony even though the determination of proximate cause could ultimately have been part of the jury's analysis of liability.[9] (See *Neumann v. Bishop* (1976) 59 Cal.App.3d 451, 460-461 [no error in permitting officer who had investigated accident scene to testify he saw no evidence of excessive speed]; *Risley v. Lenwell* (1954) 129 Cal.App.2d 608, 633 [no error in permitting California Highway Patrol officer to testify following investigation, including review of photographs, that truck was properly equipped and loaded]; see generally *Wells Truckways, Ltd. v. Cebrian* (1954) 122 Cal.App.2d 666, 674 ["Rarely, if ever, does an expression of opinion by a so-called expert not amount to that which either the court or jury might adopt as a basis for the ultimate decision in the case.  However, that does not mean that the witness is deciding the case or that in so testifying he is usurping the functions of the jury.  He is merely giving an opinion, based upon his technical training, which the court may or may not accept as testimony that is proper and necessary to an enlightened consideration and a correct disposition of the ultimate issue"].)  The appropriateness of this opinion testimony is underscored by the fact that Officer Pereira acknowledged he

---

[9]     Because the jury found neither Gray nor Barsoum had been negligent, it never reached the issue of causation.

did not know what had caused Garcia to swerve to his left, one of the controlling issues in the case.

To be sure, as quoted by the Garcia parents, the court in *Summers*, *supra*, 69 Cal.App.4th at page 1178 cautioned, "[T]he admissibility of opinion evidence that embraces an ultimate issue in a case does not bestow upon an expert carte blanche to express any opinion he or she wishes. [Citation.] There are limits to expert testimony, not the least of which is the prohibition against admission of an expert's opinion on a question of law."[10] (See *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1598-1599 ["'[t]he calling of lawyers as "expert witnesses" to give opinions as to the application of the law to particular facts usurps the duty of the trial court to instruct the jury on the law as applicable to the facts'"]; *Downer v. Bramet* (1984) 152 Cal.App.3d 837, 841 [expert witness may not testify to legal conclusion in the guise of expert opinion].)

It may be that the trial court should have sustained objections to Officer Pereira's opinion that Gray had not violated Vehicle Code section 21760[11] or that Garcia's abrupt turn was unsafe and violated the Vehicle Code. It certainly was within the

[10] In *Summers*, *supra*, 69 Cal.App.4th 1155, a wrongful death action following an accident involving a pickup truck and a tractor-trailer, the court of appeal held it was error to permit an attorney to testify to issues of law, including whether the defendant had a nondelegable duty that he breached in hiring an incompetent trucker, as well as to opine how the case should ultimately be resolved. (*Id.* at p. 1185.)

[11] That Gray was not cited following the accident, of course, was a fact, not Officer Pereira's opinion. No separate objection was made by the Garcia parents to that aspect of Officer Pereira's testimony.

19

trial court's broad discretion to have done so, even though, unlike the lawyer witness in *Summers*, nothing in Officer Pereira's testimony expressed his belief as to how the jury should decide the case. (See *Summers*, *supra*, 69 Cal.App.4th at p. 1185 [lawyer expert "was *advocating*, not *testifying*"]; cf. *People v. Lowe* (2012) 211 Cal.App.4th 678, 684, 686 [*Summers* holds "expert opinion testimony that merely expresses a general belief as to how the jury should decide the case is not permissible"; case is "distinguishable for its extremes"].) Any error in permitting those specific points in Officer Pereira's testimony, however, was harmless.

It was undisputed Gray's tractor-trailer was more than three feet from Garcia as he passed the bicycle, as required by Vehicle Code section 21760, subdivision (c). Although Officer Pereira testified there was no violation of this statute, he did not opine that Gray had exercised reasonable care when overtaking the bicycle, the ultimate issue for the jury to decide. Moreover, Gray admitted there were times that more than three feet was necessary to safely pass a bicycle, and the Garcia parents' trucking safety expert testified the three-foot requirement was just a minimum that was not sufficient in this case. The four other expert witnesses in the case—two on each side—also opined on the reasonableness of Gray's maneuver when passing Garcia. Indeed, one of the grounds asserted by the Garcia parents in their motion in limine was that Officer Pereira's testimony was cumulative. In view of the extensive expert testimony on this point, as well as the court's instruction pursuant to CACI No. 221 that the jury should compare the qualifications and weigh the competing opinions of the experts who had disagreed with each other, it is not reasonably probable the jury would have reached a

20

different result had the court precluded this limited aspect of Officer Pereira's testimony.[12]

Similarly, Officer Pereira's testimony that Garcia's abrupt turn to the left caused the accident was based on undisputed facts regarding the accident. The issue for the jury was what caused Garcia to turn left—had he lost control of his bicycle because Gray's vehicle came too close and startled him or because his bicycle hit a patch of water while he was riding too fast and holding a juice cup in one hand? Officer Pereira clearly stated he had no opinion on that question. In addition, the jury, which never reached the question of Garcia's negligence, was instructed pursuant to CACI Nos. 418 and 420 that, even if Garcia had violated Vehicle Code section 22107 prohibiting unsafe turns, that violation was excused if under all the circumstances he had acted reasonably or as a necessary response to an emergency he had not caused. The experts on both sides addressed that issue, as well. Given those instructions and the additional expert testimony, it is not reasonably probable the jury would have reached a different conclusion as to Gray's and Barsoum's negligence if Officer Pereira's testimony that Garcia violated Vehicle Code section 22107 had not been permitted.[13]

_____

[12]   As discussed, the Garcia parents did not accept the trial court's offer to specifically instruct the jury that Officer Pereira's status as a police officer did not entitle his opinion to any more weight than the opinions of the other experts.

[13]   Although, as noted, the trial court's October 10, 2019 ruling denying the new trial motion had no legal effect, the court reached the same conclusion regarding the absence of prejudice from Officer Pereira's testimony. The court explained the fact that Garcia's bike abruptly turned toward Gray's truck was not in dispute. Although Officer Pereira testified this turn violated

## 2. *Failure To Instruct Concerning Vehicle Code Section 21202 Did Not Constitute Reversible Error*

As discussed, Vehicle Code section 21202 requires a bicyclist to ride as close as practicable to the right-hand curb except under certain conditions, including when the far-right lane is too narrow for the bicycle and a vehicle to travel side-by-side in the lane (a "substandard width lane" as defined by the section). The Garcia parents' theory as to section 21202's relevance to the case, as articulated during argument concerning objections to questions posed to expert witnesses,[14] was two-fold. First, it was lawful for Garcia to ride his bicycle on Crenshaw Boulevard, even though it is a busy street with commercial traffic. Second, because lane 3 where Garcia and Gray approached the accident site was of substandard width within the meaning of section 21202, it was permissible for Garcia to ride in the middle of lane 3, which, in turn, meant that Gray should have moved all the way into lane 2 when passing him.

How those points would have been included in an instruction is a mystery, however, because the Garcia parents never proposed one. The only instruction regarding Vehicle Code section 21202 ever before the court was requested, and then

---

Vehicle Code section 22107 and caused the accident, he "specifically stated on direct and cross examination that he did not reach any conclusion on why Mr. Garcia's bike turned into the truck. The jury was free to determine that issue and heard extensive testimony from accident reconstruction experts on both sides and testimony from Plaintiffs' cycling expert on that ultimate issue."

[14] The Garcia parents do not challenge any of the trial court's evidentiary rulings other than with respect to Officer Pereira's testimony.

withdrawn, by defense counsel. Although not in the record on appeal, that withdrawn instruction apparently would have advised the jury, pursuant to CACI No. 418, that Garcia must be found negligent if he had committed an unexcused violation of section 21202 and the violation was a substantial factor in causing his death. However, Gray and Barsoum did not contend at trial that Garcia violated section 21202. Accordingly, it was not error for the court to omit that instruction.

The failure of the Garcia parents to request a different form of Vehicle Code section 21202 instruction forfeits the issue on appeal. (See *Barrera v. De La Torre* (1957) 48 Cal.2d 166, 170 [party may not argue on appeal failure to give instruction that was not requested]; *Hilts v. County of Solano* (1968) 265 Cal.App.2d 161, 171 [same]; see also *Murrell v. State of California ex rel. Dept. Pub. Wks.* (1975) 47 Cal.App.3d 264, 270 ["[w]hen instructions are abstractly correct but too general to meet a party's need, he must request a specific and correct instruction in order to complain on appeal"].)

Even if the issue were properly before us, however, the failure to give an instruction that included the statutory language could not have prejudiced the Garcia parents. The legality of Garcia riding his bicycle on Crenshaw Boulevard was never questioned. Whether he could have ridden in the middle of lane 3 consistent with Vehicle Code section 21202, and, if he had done so, what effect that would have had on the reasonableness of Gray's movement to the left when passing him, was a counterfactual hypothetical scenario divorced from the evidence at trial. Garcia rode on the edge between the gutter and the 10-foot-wide right-hand lane. Any violation of Vehicle Code section 21760 or other allegedly negligent conduct by Gray when

passing Garcia did not depend on Garcia's responsibilities or rights under section 21202.

In sum, while it may not have confused the jury to have given an instruction that quoted section 21202, as the trial court ruled, the failure to do so, if error at all, was harmless. (See *LAOSD Asbestos Cases* (2019) 35 Cal.App.5th 1088, 1096-1096 [even if court erred in omitting certain CACI instructions, any error was harmless because "it is not reasonably probable that a different result would have been reached"].)

## DISPOSITION

The judgment is affirmed. Gray and Barsoum are to recover their costs on appeal.


PERLUSS, P. J.


We concur:



SEGAL, J.



FEUER, J.